Frederic E. Hammer, J.
The defendant moves to suppress a pretrial identification on the ground that such identification was secured in violation of his constitutional rights.
A Wade hearing was held on August 28, 1975 and the court, finds the following:
On February 19, 1975 Mrs. Rose Guilien, a Queens housewife, who was visiting a friend, returned to her residence in Woodside. As she entered her home, she noted that her back door bolt was snapped and that someone had broken into her house. She entered the building and investigated. On the second floor she came across a strange man in her daughter’s bedroom. This man, later identified as the defendant, threatened her with a knife and struck her about the face. He then proceeded to rob her, taking among other things her wedding ring and some money. After a few minutes, the stranger fled and the injured woman called the police.
This robbery took place at approximately 2:45 p.m. Prior to *521 this incident, at about 2:00 p.m., a young female neighbor, aged 14, residing across the street from the complainant, noticed a strange man standing on Mrs. Guilien’s porch. As she watched this man, he jumped over a nearby wall and disappeared. The neighbor later also identified this man as the defendant.
Approximately two weeks later, on March 5, 1975, at 5:00 p.m., the youthful neighbor saw the defendant walking in the area. With great presence of mind, she called the police. As she did so, the defendant started to leave the neighborhood and the young lady alerted her neighbors. Soon some 25 people started to pursue the alleged robber in classical "hue and cry” fashion. As they apprehended him, a police car, answering the girl’s call, appeared on the scene and Detective Frank Desidero, 112th precinct, inquired what happened. The complainant immediately identified the defendant who was being held by her neighbors as "the man who robbed me” and he was placed under arrest on her complaint. The defendant was then taken to the 112th precinct and no further identification took place, nor was a lineup held.
Defendant now attacks the validity of the complainant’s identification on the grounds that (1) on-the-scene identification was influenced by her neighbors and (2) that the defendant should have received a lineup after his arrest.
In considering defendant’s first point, an analysis of the Wade-Gilbert-Stovall trilogy shows that there must exist a two-fold process of identification before constitutional protection can attach. The first identification is the original scene-of-the-crime observation by the witness of the person who allegedly committed the crime. The second identification is a subsequent police-arranged confrontation prior to trial which may be inconsistent with the defendant’s constitutional rights. At this confrontation the witness seeks to identify the person whom he observed on the first incriminating occasion. Thus, it is important to keep in mind the fact that the Wade rule does not apply "where there has been no previous identifications in the presence of the police” (United States v Wade, 388 US 218, 253, partial dissenting opn of Mr. Justice White). What type of identification then is necessary to invoke Wade protection? At the very least, the Supreme Court cases would appear to require more than a general question of identification. They would appear to require a specific form of identification, namely, a "confrontation compelled by the State between the *522 accused and the victim or witness to a crime” (United States v Wade, supra, p 228).
In the case at bar there was a confrontation when the complainant viewed the defendant a second time on March 5, but it is clear that this viewing was not a "confrontation compelled by the State”. The facts show that the police had nothing to do with the witness’ confrontation with the defendant at that time; rather such a viewing was the result of action on the part of private citizens. Under these circumstances, this court feels that Wade protection does not apply to .confrontations arranged by private citizens but is limited only to those viewings arranged by the State. Since the State had no hand in the identification of the defendant, there is no Wade issue to rule upon and the court finds no merit in defendant’s first contention.
It might be further noted that in similar areas dealing with the suppression of illegal evidence the courts of this State have long recognized the principle that constitutional prohibitions were normally aimed at and intended as a restraint upon governmental excesses rather than those of a private citizen unless it appeared that such private activities had the approval and participation of government. (Cf. People v Kowalczyk, 20 NY2d 835.) As the court pointed out in Jones v United States (362 US 257), the restrictions upon search and seizure are obviously designed for protection against official invasion of privacy. This doctrine was reaffirmed in Mapp v Ohio (367 US 643), People v Horman (22 NY2d 378), and Sackler v Sackler (15 NY2d 40). The same rule applies in the admissions area in that statements made to private persons are not barred by Miranda prohibitions (People v Gunner, 15 NY2d 226).
The second contention advanced is that defendant should have received a lineup after his arrest. Counsel has cited no cases that stand for the proposition that one has an absolute or a constitutional right to a lineup. A lineup is a police procedure designed to aid a criminal investigation, but, while a defendant may be entitled to a fair lineup, due process does not demand that he receive a lineup as an incident to arrest. The court sees no merit in defendant’s second point.
Based upon the foregoing, the application to suppress identification is denied in all respects.