OPINION OF THE COURT
Benjamin Altman, J.
The court faces the unusual question: Can the threatened loss of one’s business (livelihood) be sufficient to cause one to make involuntary statements to a private person?
The defendants have been charged with grand larceny in the second degree (Penal Law, § 155.35). The defendant now moves, pursuant to CPL 60.45 (subd 2, par [a]), to suppress certain statements as involuntarily made.
The factual situation is as follows.
Defendant ran a travel agency at 1775 Broadway, New York County, and, like most travel agencies, was a signatory to the Air Traffic Conference of America (ATC). On February 13, 1978, a senior enforcement officer of the ATC, Robert S. Price, with a colleague, Anthony Scozzafava, told defendant that he was going to make an inspection. Both men flashed their wallet identifications. Defendant asked what they wanted and gave them some material to commence their inspection, along with the use of a desk in his outer office to work on. The defendant had had a routine inspection by the ATC about a year and a half prior and assumed that this was a repeat of the routine inspection.
In about an hour both Price and Scozzafava came back and told defendant that he had substantial debits and showed defendant some vouchers and in sum told defendant he owed the ATC in excess of some $80,000.
There is conflicting testimony at this point. The People’s witness states that he spoke very quietly and never raised his voice.
*832 The People contend the ATC enforcement officers found discrepancies in the defendant’s file. One of the officers said the defendant stated the amount of the discrepancy was $62,370, and proceeded to write out a check to Air Traffic Conference of America for that amount without the officers asking him to write the check.
The officer testified that the defendant did not. object to their return on the next day nor did they interfere with the attendance of the defendant at the funeral of a relative.
The defense claims the officers raised their voices, threatened the defendant and used an overbearing and threatening motion. They threatened to put the defendant out of business. They allegedly told the defendant the only way out is a certified check in the amount they claimed the defendant owed.
The defendant testified that he was not permitted to attend the funeral of his grandfather.
Further, he placed a "stop payment” order on the personal check (for $62,370) which he issued.
The issue is whether the actions of the enforcement officers of the ATC (a nongovernmental agency) were such as to cause the alleged statements made by the defendant to be involuntary and thereby suppressible.
CPL 60.45 (subd 2) states:
"A confession, admission or other statement is involuntarily made by a defendant when it is obtained from him:
"(a) By any person by the use or threatened use of physical force upon the defendant or another person, or by means of any other improper conduct or undue pressure which impaired the defendant’s physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement”.
The Air Traffic Conference[1] (ATC) is a division of the Air Transport Association of America. The main function of the ATC is to administer the travel agency program. It is funded by the member airlines.
A travel agent enters into a sales agency agreement in order to sell tickets for the member airlines of the ATC. Any *833 inspection of the individual agency is made pursuant to the sales agency agreement.
It is noted that in areas dealing with the suppression of illegal evidence, the courts of this State have recognized the principle that constitutional prohibitions were normally aimed at and intended as a restraint upon governmental excesses, rather than those of a private citizen, unless it appeared that such private activities had the approval and participation of the government (People v Calinda, 83 Misc 2d 520).
The common-law rule excluding confessions induced by threat is limited to inducement by a person in authority (United States v Solomon, 509 F2d 863).
If statements were voluntary, and hence admissible, the test is whether statements were voluntarily made in the traditional and ordinary sense, that is, without duress, mental or physical, and such standard must also be applied in determining whether or not it comports with the constitutional requirements of due process (People v Spano, 4 NY2d 256; see, also, Gallegos v Nebraska, 342 US 55).
Involuntary statements or confessions may be exacted as a result of mental coercion as well as physical abuse (Ferguson v Boyd, 566 F2d 873; United States v Lehman, 468 F2d 93).
In determining whether involuntary confession has been exacted as a result of mental coercion, the ultimate question is whether pressure, in whatever form, was sufficient to cause the capacity for self determination to be critically impaired (Ferguson v Boyd, supra).
In determining the voluntariness of consents, courts will consider factors that indicate the consenting party was particularly susceptible to coercive tactics (Scheneckloth v Bustamonte, 412 US 218).
The consenting party’s maturity, intelligence, or sophistication in dealing with the police are significant in evaluating the coercive impact of police conduct. Young age or low intelligence (Schneckloth v Bustamonte, supra; United States v Mayes, 552 F2d 729) can play a crucial role in invalidating consent when the police or governmental agents attempt to exploit the consenting party’s condition.
Even a highly coercive setting can be mitigated by a showing that the individual had high intelligence (United States v Wiener, 534 F2d 15), was well versed in the law (United States v Juarez, 573 F2d 267), had prior experience with the police *834 (United States v Cepulonis, 530 F2d 238), or in general was a skilled or highly experienced person (United States v Weiner, supra). But even a college education and wide experience can be outweighed by the misrepresentation of the police (United States v Molt, 444 F Supp 491).
But the concept is that a larger amount of coercion is permissible when the individual involved is better equipped to resist it.
But as indicated in Schneckloth v Bustamonte (supra), no one factor is per se coercive without reference to its factual context. Coercion can only be defined relative to the characteristics of the individual.
The familiarity of the location, the presence of other employees and customers in the outer office, good mental health, a good education and business experience can help an individual.
It could lessen the possibility of coercion. Or it might provide the individual with confidence and ability to parry the immediate threat with some oblique move to gain time.
There is an important distinction to be made here. The People have set forth extensive cases as to what constitutes coercion. Here, we are not confronted with the case of a defendant being deprived of food, sleep, or not being told he has a right to counsel. (See People v Anderson, 42 NY2d 35.) The pressure here was the deprivation of freedom — a substantial and immediate threat to a business.
In the case before this court, the alleged coercion was that of immediate financial ruin — the employees would be dismissed and the door would be locked. The threat is substantiated hereto. But the methods of coercion in the cases cited by the People (i.e., lack of food and/or sleep, physical threats, incarceration) can be more of a drawn out confrontation of physical freedom, physical form, and/or wills than immediate financial ruin.
The options of the individual in each case can differ. One can resist physically or more likely, mentally, in the first situation. In the other a ploy to gain time and then seek legal advice or complain to the appropriate agency would be more appropriate.
Townsend v Sain (372 US 293) dealing with confessions, sets forth some concepts to consider relating to coercion. It states (p 307): "If an individual’s 'will was overborne’ or if his *835 confession was not 'the product of a rational intellect and a free will,’ his confession is inadmissable because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure”.
The involuntariness of an inculpatory statement must be viewed by looking at the totality of the circumstances under which it occurred (Clewis v Texas, 386 US 707).
The test is whether the statement was made voluntarily beyond a reasonable doubt (People v Yarter, 41 NY2d 830).
The next concept to consider is whether the fact that the "officers” were from the private sector[2] and not governmental agents (or persons acting for such agents), should matter.
In Searches & Seizures, Arrests & Confessions, by William Ringel (1972 ed), the author discusses CPL 60.45. He states (p 127, § 102.02): "This new section interdicts statements, made by a defendant, whether inculpatory or exculpatory, when made to a private person as well as to police, if obtained as a result of coercion.”
Ringel further states (p 127) "the acts described in Townsend [supra], as inducing involuntariness, now, under New York Law apply equally to such acts if performed by private persons”. (Emphasis added.)
The Commission Staff Comment of the Temporary State Commission on Revision of the Penal Law and Criminal Code as to CPL 60.45, referring to subdivision 2, states: "Subdivision 2 seeks to exclude from evidence every such statement obtained by any kind of pressure or under any circumstances which the courts and fair-minded people in general do or might consider coercive, unjust, improper or in any way conducive to possible false self-incrimination(Emphasis added.)
In effect, coercion can be exerted by private individuals as well as governmental agents. Although a private individual rarely is involved as the moving force behind an admission or confession which is involved in a criminal proceeding, statements made to him can be the result of coercion.
The case of the United States v Solomon (509 F2d 863, supra) dealt with the issue of admissibility of statements *836 elicited by the exchange, a nongovernmental agency, from a member of the New York Stock Exchange.
The Court of Appeals, Second Circuit, stated (p 872): "Whatever may be the ultimate solution of the question how far coercion by non-governmental sources can ever demand exclusion as distinguished from consideration by the fact-finder, in the instant case, on this issue of involuntariness in fact we find the distinction of Garrity [385 US 493] noted in section I of this opinion to be important. There the penalty for a claim of a right to remain silent was mandatory dismissal from office, loss of accrued pension benefits and permanent disability from state or municipal employment. Here there was no certainty what penalty NYSE would prescribe if Solomon refused to speak. It seems plain to us that Solomon, who had conferred with counsel and had his lawyer present during the off-the-record and the later on-the-record interrogation, decided it would be to his advantage to make a clean breast of falsiñcations that were bound to be discovered, or, indeed, very likely had been, rather than add another item to the case against him. To be sure, Solomon’s position was not a particularly pleasant one. But the rule excluding involuntary confessions does not protect against hard choices when a person’s serious misconduct has placed him in a position where these are inevitable. Of course, if there were any question whether Solomon was responsible for the false entries in Weis’ books, he would have been entitled to have a trier of the facts consider whether the circumstances under which he admitted having conceived the plan affected the reliability of his statement. But there was none. It would be a wholly unwarranted extension of the principle with respect to involuntary confessions to include Solomon’s statement to the Exchange.” (Emphasis added.)
Thus, an indefinite penalty, legal counsel, and time for reflection would appear to make statements made to a nongovernmental agency admissible.
As stated in the Solomon decision (supra) the court has considered the circumstances under which the defendant wrote the check to cover the alleged funds owed.
Looking at the totality of the circumstances, it is the conclusion of the court that there is reasonable doubt the defendant made certain statements outside his own free will.
Therefore, the defendant’s motion to suppress certain statements is granted.

. The ATC had been deemed a nongovernmental agency by a decision of Judge Harold Rothwax.

. As previously stated, Judge Harold Rothwax ruled the Air Traffic Conference (ATC) was a private entity, although the court notes the defense counsel’s argument that the ATC is indeed a governmental or quasi-governmental agency.