*1047 OPINION OF THE COURT
Stanley Gartenstein, J.
Was the landmark Wade-Gilbert-Stovall trilogy[1] so modified by Manson v Brathwaite (432 US 98) that it now encompasses suppression proceedings aimed at identification evidence involving no police or State action whatsoever? The court’s negative response to this question is given reluctantly. This reluctance stems from three sources:
First, we believe philosophically that the potential inflammatory impact of suggestive identification testimony is such that it warrants adoption of an across-the-board exclusionary rule (after appropriate hearing) directed at any such testimony not meeting the strictest standards of reliability and/or nonsuggestiveness. This belief is held whether the identification at issue was State based or privately based;
Second, the need for an exclusionary rule to this effect becomes even more apparent in the face of an alarming proliferation of private security forces many of whose employees have criminal records of their own. These forces are utilized in almost every business or walk of life to an extent which recalls aspects of frontier vigilante justice;
Third, because were we of a mind to follow these philosophical beliefs despite our contrary reading of Supreme Court cases, we could easily hide behind People v Walker (97 Misc 2d 171),[2] which holds in harmony with these personal beliefs, an act on our part which would involve considerable intellectual dishonesty.
the facts: Defendant is charged with several counts of petit larceny and criminal possession of a forged instrument. The acts in question all allegedly took place at New York University Hospital where defendant was employed. On January 5, 1979, defendant received a call directing her to report to a room in the hospital in which she was met by one Rocco Cornetta, a private security officer employed by the hospital. Here she was directed to furnish three exemplars of her handwriting. While seated there, one Alfred Nonnon, a supervisor of general stores at the hospital and two employees of the general store entered the room and identified her as the *1048 alleged perpetrator of certain criminal acts which took place nearly four months prior to the events in question. She is charged with these acts in the information before us.
At a Wade hearing conducted upon the consent of the People, the court raised the threshold issue of police or State action. Decision was reserved on the question of whether or not the hearing would go further once the constitutional ramifications of a lack of State action were ruled on.
THE WADE-GILBERT-STOVALL TRILOGY AND ITS PROGENY:
In 1967, the Supreme Court of the United States turned its attention to due process issues surrounding identification testimony in three cases which have come to be known as the Wade-Gilbert-Stovall trilogy:
United States v Wade (388 US 218, 228), holding that "[t]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification” and enunciating a rule in conjunction with Gilbert v California (388 US 263), prohibiting an in-court identification following an uncounseled lineup except where the prosecution could demonstrate that it was not tainted by unconstitutional suggestiveness; and Stovall v Denno (388 US 293, 302), recognizing that the conduct of a confrontation may be "so unnecessarily suggestive and conducive to irreparable mistaken identification” as to deny due process of law, but permitting introduction of evidence thereof along with in-court identification where the unusual necessity for the procedure outweighed the danger of suggestive confrontation. (Black defendant handcuffed by seven white law enforcement officers brought to hospital room of only witness to a murder where police reasonably believed the witness might die before less suggestive confrontation could be arranged.)
Following the trilogy, Simmons v United States (390 US 377, 384), refused to prohibit introduction of photo identification by witnesses to a bank holdup ruling that the identification procedure would be set aside only if it was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification”. The Supreme Court placed primary focus in this matter on the chance of misidentification. (See, also, Foster v California, 394 US 440 [repeated confrontations between suspect and manager of store which was robbed were so suggestive as to violate due process]; Coleman v Alabama, 399 US 1.)
In Neil v Biggers (409 US 188), a rape victim’s one-on-one *1049 showup and voice identification of the defendant seven months after the event was allowed to stand in light of the fact that the victim had been in defendant’s presence both indoors and outdoors by a full moon for a substantial period of time, and her verbal description of her assailant matched defendant. Moving to a "totality of the circumstances” approach, the high court held the identification reliable even though the confrontation procedure was suggestive (supra, p 199). Applying this test, the court found "no substantial likelihood of misidentification” and ruled that "[t]he evidence was properly allowed to go to the jury” (supra, p 201).
MANSON V BRATHWAITE:
Because Manson v Brathwaite (432 US 98, supra), is the very foundation of People v Walker (97 Misc 2d 171, supra), the only reported holding on nonpolice or non-State action as forming the basis for suppression of identification testimony, it will be treated in depth.[3] In Brathwaite, a black police officer who had made an "undercover buy” of heroin in a doorway standing some two feet from the seller for some two or three minutes, described the seller to another police officer who left a photo of defendant for him. This photo was identified two days later by the undercover officer. The Supreme Court upheld the identification under, the "totality” and "substantial likelihood of irreparable misidentification” rules enunciated in Simmons v United States (390 US 377, supra). In doing so, it placed particular stress upon Neil v Biggers (409 US 188, supra), stating (432 US, at p 106): "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identiñeation possesses sufficient aspects of reliability” (emphasis added).
Brathwaite then discussed two different remedial procedures aimed at the problem of suggestive identification procedures: first, a per se exclusionary rule grounded on the principle of police deterrence by imposition of absolute harsh standards (cf. Smith v Coiner, 473 F2d 877); second, a "totality of circumstances” rule recognizing out-of-court identifications possessing "certain features of reliability” (432 US, at p 110; cf. United States ex rel. Kirby v Sturges, 510 F2d 397). This second approach which was adopted in Brathwaite was characterized by the Supreme Court itself as the "more lenient” *1050 (432 US, at p 110). Its rationale was clearly set forth in terms of preserving relevant evidence for consideration and evaluation by the trier of facts. Rejecting the per se rule, the court stated (432 US, at p 112): "The per se rule, however, goes too far since its application automatically and peremptorily, and without consideration of alleviating factors, keeps evidence from the jury that is reliable and relevant.”
Brathwaite, therefore as characterized by the court itself, was more lenient with regard to police action than might have been thought to be the court’s inclination as evidenced by earlier decisions. That the Supreme Court was retreating from frontiers of due process pioneered by an earlier, more liberal court is clear even from the bland characterization by the majority. Mr. Justice Thurgood Marshall in dissent was more outspoken (432 US, at p 118): "Today’s decision can come as no surprise to those who have been watching the Court dismantle the protections against mistaken eyewitness testimony erected a decade ago in United States v. Wade [citation]; Gilbert v. California [citation] and Stovall v. Denno [citation].”
What clearly emerges is the fact that Brathwaite was a step backwards via an expansion of the rules of admissibility aimed at allegedly tainted identifications. Regardless therefore, of how out-of-context quotations from Brathwaite may be glued together in arguments which are more wishful thinking than reality in proposing that the "totality” rule is now to be applied across the board whether the conduct at issue was State or private, the fact remains that Brathwaite was decided strictly on the basis of police action — probably more so than any other case reaching the high court. Moreover, eliminating any doubt as to possibly broader application, the Supreme Court itself limited the thrust of any exclusionary rule only to police conduct. As conclusively stated in the majority opinion (432 US, at p 112): "Although the per se approach has the more significant deterrent effect, the totality approach also has an influence on police behavior. The police will guard against unnecessarily suggestive procedures under the totality rule, as well as the per se one, for fear that their actions will lead to the exclusion of identiñcations as unreliable” (emphasis added).
This conclusion not only comes into focus from the text of the majority opinion, but from the strong criticism set forth in the dissent (432 US, at p 125).
*1051 PEOPLE V WALKER:
We turn now to People v Walker (97 Misc 2d 171, supra), cited by the defense in support of its application for exclusion of the privately arranged identification in issue herein. In this matter, the County Court of Westchester County, relying on People v Blake (35 NY2d 331) which cast doubt on the reliability of all identification testimony, formulated a new procedure which it delineated as a "Biggers-Brathwaite Hearing” for challenged identification testimony whether State-based or privately based. The court, quoting language from recent decisions dealing with Wade issues, asserted that the "grave likelihood of possible misidentification” (97 Misc 2d, at p 174) by a privately arranged confrontation mandated a hearing on due process grounds. Although the Walker court does not fully explain its reasoning, its language indicates reliance on Federal and State due process standards on the one hand, and on Brathwaite on the other.
As tempting as it would be to follow Walker, agreeing as we do philosophically with its assessment of the dangers inherent in all suggestive identification testimony, we cannot in good conscience do so. While it is true that doubts have been cast on the reliability of all suggestive identification testimony (cf. People v Blake, supra), these doubts have arisen only in the context of State-arranged confrontations between victim and accused. As we turn to the general due process standards which underlie Walker, we must recognize the principle that unauthorized acts of private individuals have been held not to violate constitutional limitations on government activity (People v Jones, 47 NY2d 528).
Finally, we respectfully believe that the Walker court misplaced reliance on Brathwaite which by its own terms, restricted instances of vulnerable identification testimony as opposed to broadening them to an extent where this reliance thereon by the Walker court might be upheld. Brathwaite is the clearest instance of police conduct of any identification case ever considered by the Supreme Court. By its own terms, the high court adheres to the rationale of deterrent effect on police conduct which always formed and still forms the sole basis for either exclusionary rule, per se or "totality.” Bearing these factors in mind, we find it impossible to rely on Brathwaite as Walker did, utilizing its contrary rationale for the tenuous thesis that the exclusionary rule has now been extended to privately arranged confrontations.
*1052 We are bolstered in our reading of Brathwaite by authority in other jurisdictions. In Ford v State (386 NE2d 709 [Ind]) the Indiana Court of Appeals rejected the rationale and result of Walker holding that "the evidence must reveal that law enforcement agencies or the prosecution engineered the confrontation between the defendant and the witness.” (Supra, p 712.) See, also, United States v Venere (416 F2d 144) in which a stadium employee confronted a counterfeiter at a showup arranged by stadium security personnel, the court finding no Wade issue.
The motion to suppress is denied strictly upon a reading of the sparse available authority. We are confident that all recognize the fact that a defendant’s rights are no less trampled as a result of a suggestive confrontation simply because the uniform worn by the offending enforcement officer is that of a private security force rather than that of the State. Appellate proceedings would therefore appear to be appropriate so that our higher courts, if they be so disposed, will be given the opportunity to expand available protection — a prerogative of an individual State properly exercised through appellate as opposed to nisi prius courts.

. United States v Wade (388 US 218; Gilbert v California (388 US 263); Stovall v Denno (388 US 293).

. Walker’s reasoning was followed by the Honorable Harold J. Rothwax (Sup Ct, NY County) in People v Viscovic, in an oral ruling dated July 27, 1979.

. People v Calinda (83 Misc 2d 520) involved a civilian arranged confrontation in which a Wade hearing was denied. It was decided prior to Brathwaite.