OPINION OF THE COURT
Walter M. Schackman, J.
The defendant has moved for a hearing on the issue of identification and has thus presented the following question to the court. Does a purely private identification procedure require the scrutiny of a pretrial hearing to determine admissibility? Various courts have considered this issue but no consistent result has been reached (cf. People v Coleman, 66 AD2d 982; People v Calinda, 83 Misc 2d 520; People v McLoughlin, 103 Misc 2d 1046; People v Walker, 97 Misc 2d 171; Chavis v Henderson, 488 F Supp 325, revd on other grounds 638 F2d 534).
At the heart of this judicial disagreement are varying opinions of the purpose and effect of the exclusionary rule when applied to the area of identification. This confusion derives from the evolution of decisional law as expressed by the Supreme Court in United States v Wade (388 US 218) and then Manson v Brathwaite (432 US 98). In Wade, a per se exclusionary rule was fashioned expressly designed to exclude evidence resulting from impermissibly suggestive police procedures. If the police used a suggestive procedure exclusion was automatic. By the time Manson was decided, the rule had evolved to the point where the evidence was no longer excluded per se but was to be evaluated in the “totality of circumstances” and admitted *815 if in that context it was “reliable” (Manson v Brathwaite, supra; Simmons v United States, 390 US 377; Neil v Biggers, 409 US 188). It is the change in focus that has caused conflicting decisions in the way the lower courts have interpreted these cases. When per se exclusion was generally accepted by the courts, it was clear that only police conduct could cause exclusion as the rule was designed as a deterrent to improper law enforcement procedures. (United States v Venere, 416 F2d 144.) But when reliability became the focal point of admissibility, courts began to reason that suggestive conduct by private citizens could affect reliability as well. (People v Walker, supra; Chavis v Henderson, supra; see, also, United States v Ash, 413 US 300, 318, n 11.)
The Walker and McLoughlin cases both analyze the issue in terms of the changes in the law as expressed in Manson v Brathwaite (supra). (People v Coleman, supra, p 982, is the only appellate case on the issue but the result is the less than conclusive bare statement that the exclusionary rule “would seem to be inapplicable.”) Walker (supra), decided first, focuses on the reliability test of Manson (supra) and holds that suggestive private procedures can have the same adverse effect on reliability as a police procedure and therefore that a pretrial hearing should be held. In McLoughlin (supra), the court, while agreeing philosophically with Walker felt bound by precedent to reject the Walker conclusion. It held that even if Manson does mandate a shift in focus to reliability, it is in fact a more restrictive ruling than Wade (supra) in that it allows tainted evidence to be used if the “totality of circumstance” indicates “reliability” (Manson v Brathwaite, supra). The McLoughlin court found it incongruous to expand the defendant’s rights based on a decision that had in fact diminished them. If this court had been called upon to decide the issue at the time the McLoughlin court did so, it too would have felt bound by precedent to deny the hearing.
However, subsequent to the McLoughlin decision the Court of Appeals decided People v Adams (53 NY2d 241). In Adams, the Court of Appeals rejected the Manson totality approach, and, basing its decision on the New York *816 State Constitution, reinstated the per se exclusionary rule. The focus for admissibility, however, remained reliability and not deterrent. The court stated (pp 250-251):
“The rule excluding improper showups and evidence derived therefrom is different in both purpose and effect from the exclusionary rule applicable to confessions and the fruits of searches and seizures. In the latter cases generally reliable evidence of guilt is suppressed because it was obtained illegally. Although this serves to deter future violations, it is collateral and essentially at variance with the truth-finding process * * * But the rule excluding improper pretrial identifications bears directly on guilt or innocence. It is designed to reduce the risk that the wrong person will be convicted as a result of suggestive identification procedures employed by the police.
“A reliable determination of guilt or innocence is the essence of a criminal trial. A defendant’s right to due process would be only theoretical if it did not encompass the need to establish rules to accomplish that end. Permitting the prosecutor to introduce evidence of a suggestive pretrial identification can only increase the risks of convicting the innocent in cases where it has the desired effect of contributing to a conviction.”
Concededly, Adams (supra) is discussing police procedures (as the facts presented dictated). However, in this court’s opinion, its emphasis on reliability and the construction of rules to protect the innocent, dictates that a private identification pass the scrutiny of a Wa<ie-type hearing. The court believes that in appropriate circumstances a private identification can be as suggestive as one with police involvement and as such may equally infect the truth-finding process.
In the instant case, a showup was held when the defendant was exhibited alone to the victim by the victim’s employer, the owner of the gas station where the crime occurred. The employer had not been present at the time of the crime, but, the complainant had described the car used in the incident and the perpetrator of the crime to his employer. Three days subsequent to the crime, the employer pulled this defendant from his car and held him, *817 together with the car, until the victim arrived and identified him.
The possibility of suggestiveness is inherent in this situation. The victim may have wanted to please his employer by making an identification. Additionally, evidence linking the defendant to the crime, the automobile, was simultaneously exhibited. Under these circumstances a hearing should be held to determine if suggestiveness was, in fact, present and if so what effect it should have on the admissibility of the identification.