259 N.J. Super. 217 (1992)
611 A.2d 1160
STATE OF NEW JERSEY, PLAINTIFF,
v.
JEFFREY MCCORD, DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
July 21, 1992.
*218 Carmen Messano, Prosecutor, by Gerard H. Breland, Asst. Prosecutor, for State.
Meyer Winograd, Deputy Public Defender, by Margaret R. Murphy, Asst. Deputy Public Defender, for defendant.
DeSTEFANO, J.S.C.
Defendant seeks a Wade Hearing to contest the admissibility of his pretrial identification. The confrontation resulting in defendant's identification was arranged by private persons. The Prosecutor argues that defendant is not entitled to a hearing since no state action brought about the confrontation. The issue presented is not unusual, yet is one of first impression *219 in this State. The defendant's application for a hearing is granted.
On January 2, 1992, at approximately 8:00 P.M., several customers entered the Tribal Arts Store at the Newport Center Mall in Jersey City. Hilda Gonzalez was working alone in the store. While Ms. Gonzalez was waiting on a customer, a black male went behind the counter, opened the showcase and stole a display case of rings. The thief placed the case in his jacket and left the store. The suspect was described as a light skinned black male, 5'6" to 5'8" tall. The man was not apprehended that evening.
The next day the defendant, Jeffrey McCord, was detained in the Newport Center Mall by Security Officer Reginald Watkins. Watkins suspected that McCord had committed the theft. Why Watkins suspected McCord is unknown. McCord was handcuffed and detained in the security office. Ms. Gonzalez was summoned to the security office and asked if McCord was the person who stole the rings from her store. Ms. Gonzalez positively identified Mr. McCord as the thief. The Jersey City Police were summoned and defendant was placed under arrest.
On July 7, 1992, defense counsel requested a Wade Hearing to test the reliability of defendant's identification.
A Wade Hearing is a preliminary inquiry to determine the admissibility of an identification. U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). To secure this Hearing a defendant must make a threshold showing of an impermissibly suggestive identification, or a violation of his Sixth Amendment right to counsel. State v. Ortiz, 203 N.J. Super. 518, 497 A.2d 552 (App.Div. 1985); contra; State v. Cooper, 165 N.J. Super. 57, 397 A.2d 702 (App.Div. 1979) aff'd., 87 N.J. 304, 434 A.2d 61 (1979) [rendered moot by the defendants having pled guilty]. Defendant alleges a violation of due process arguing that his identification was impermissibly suggested, unreliable and apt to result in a substantial likelihood of his misidentification. See *220 Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
Should an identification procedure, conducted by private citizens, be subject to the scrutiny of a pretrial hearing to determine admissibility? The issue presented, deceptively simple on its face, is the subject of judicial disagreement.
One line of decisions limits Wade protection to confrontations arranged by government action. These decisions focus on the restraint of governmental excess. U.S. v. Venere, 416 F.2d 144 (5th Cir.1969); State v. Pailon, 590 A.2d 858 (R.I. 1991); People v. Coleman, 66 A.D.2d 982, 412 N.Y.S.2d 44 (N.Y. App. Div. 1978); People v. Calinda, 83 Misc.2d 520, 372 N.Y.S.2d 479 (N.Y.S.Ct. 1975); People v. McLoughlin, 103 Misc.2d 1046, 427 N.Y.S.2d 398 (Cty.Ct. 1980).
In McLoughlin, the court felt bound to limit the Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), "totality of the circumstances," test to police action and not apply it across the board to private action. The judge, however, expressed the view that the rule should be applied to private action as well. The court noted the, "proliferation of private security forces many of whose employees have criminal records," 427 N.Y.S.2d at 398 and, that a defendant's rights are equally trampled when a privately engineered or police sponsored confrontation is suggestive. 427 N.Y.S.2d at 402.
Two New York cases hold that a private identification procedure should be subject to the scrutiny of a pretrial hearing. People v. Blackman, 449 N.Y.S.2d 842, 113 Misc.2d 814 (S.Ct. 1982); People v. Walker, 97 Misc.2d 171, 411 N.Y.S.2d 156, (N.Y. Crim. Ct. 1978).
In People v. Blackman, supra, the court focused on reliability as the key to admissibility. This approach recognized that suggestive conduct by private citizens effects reliability as much as impermissibly suggestive police procedures. The court cited a New York Court of Appeals Decision, People v. Adams, 53 N.Y.2d 241, 423 N.E.2d 379, 440 N.Y.S.2d 902 (Ct. of *221 App. 1981), to underscore the importance New York courts place on reliability as the touchstone for admitting evidence of prior identification; shifting emphasis from the deterrent approach of the exclusionary rule.[1]
To appreciate this shift, an abbreviated history is in order. Under Wade and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), an impermissibly suggestive police procedure or Sixth Amendment violation automatically resulted in exclusion. U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, supra. The Court later began to back away from a per se exclusionary rule. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); U.S. v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). The law has now evolved to the point that identifications are evaluated in terms of "reliability" and "totality of circumstances". Manson v. Brathwaite, supra; Neil v. Biggers, supra; Simmons v. U.S., 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
In People v. Walker, supra, the court said,
"The exclusionary rules of Wade and Stovall, (citations omitted) were fashioned to deter improper conduct on the part of law enforcement officials which might lead to mistaken identification ... however, the decisions post Simmons indicate that the protection of due process is one against unreliable evidence, rather than one as a bar to the use of unreliable procedures." People v. Walker, supra 411 N.Y.S.2d at 158.
*222 The march towards evaluating privately arranged confrontations in terms of reliability and totality of circumstances has its detours. In State v. Pailon, 590 A.2d 858 (R.I. 1991), the Supreme Court of Rhode Island declined to find a due process violation in a privately arranged confrontation. The Court held that absent state action, "no Constitutional violation that would give rise to the creation of an exclusionary rule has been committed." Id. at 863. The Court found that the best guarantee of due process, in the situation presented, rested in the defendant's right to cross-examine and expose a witness's lack of credibility; the state's burden of proving every element of the crime, including identity, beyond a reasonable doubt, the requirement of a unanimous jury verdict; and the Court's power to review evidence on a motion for a new trial. The Court declined to fashion additional exclusionary rules and cited extensively the U.S. Supreme Court decision in Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).
In Connelly, the Court dealt with the suppression of a confession. Chief Justice Rehnquist said,
"The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the due process clause ... the purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution ... we have previously cautioned against expanding currently applicable exclusionary rules by erecting additional barriers to placing truthful and probative evidence before state juries .. . we hold that coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the due process clause of the Fourteenth Amendment." 479 U.S. at 166-167, 107 S.Ct. at 521-22.
The Court in Pailon did point out that there was no error in the trial court conducting a preliminary hearing. This was squarely within the exercise of the court's discretion. The Court went on, "... even though such private actions might not have required such a Preliminary Hearing, it is conceivable that identification evidence might become so unreliable as to fall below the threshold of competence .... this indeed would be a rare occurrence and would involve the question of lack of personal knowledge ..." 590 A.2d at 863.
*223 The Supreme Court of Connecticut viewed the identification issue from a different angle in State v. Holliman, 214 Conn. 38, 570 A.2d 680 (Conn. 1990). The Court acknowledged the U.S. Supreme Court's holding in Colorado v. Connelly, supra, and found that absent state action, there is no Constitutional underpinning for a due process violation. The Court went on however,
"the criteria established for determining the admissibility of identifications in the due process context are appropriate guidelines by which to determine the admissibility of identifications that result from procedures conducted by civilians." 570 A.2d at 684.
This approach finds support on the federal level as well. In U.S. v. Bouthot, 878 F.2d 1506 (1st Cir.1989), the First Circuit recognized that due process in the identification context focuses on fairness of the trial, and not exclusively on police deterrence. "... it follows that Federal Courts should scrutinize all suggestive identification procedures, not just those orchestrated by the police, to determine if they would sufficiently taint the trial so as to deprive the defendant of due process. 878 F.2d at 1516." This approach focuses on the effects of, instead of the causes for, pretrial confrontations.
N.J. jurisprudence follows the traditional two-pronged analysis to determine the admissibility of a police supervised identification. State v. Madison, 109 N.J. 223, 536 A.2d 254 (1988).
"In conducting the Supreme Court two-step analysis, a court must first decide whether the procedure in question was in fact impermissibly suggestive. If the court does find the procedure impermissibly suggestive, it must then decide whether the objectionable procedure resulted in a very substantial likelihood of misidentification." 109 N.J. at 232 [536 A.2d 254] citing Manson v. Brathwaite, supra, Simmons v. U.S., supra, Neil v. Biggers, supra, and Stovall v. Denno, supra.

Our Supreme Court noted the shift in emphasis from the suggestiveness of the confrontation, to reliability as the linchpin in determining the admissibility of identification testimony. State v. Madison, supra, 109 N.J. at 232-233, 536 A.2d 254.
*224 Most courts find no abuse of discretion where a trial court holds a preliminary hearing to determine the admissibility of identification evidence arranged by civilians. State v. Pailon, supra; State v. Holliman, supra; U.S. v. Bouthot, supra; People v. Blackman, supra; People v. Walker, supra. This court is persuaded by the approach taken by the Supreme Court of Connecticut in State v. Holliman, supra. Applying the traditional Manson v. Brathwaite, supra, two-pronged test to civilian arranged identifications is good practice. This approach recognizes there is no due process violation absent state action; limiting use of the exclusionary rule as suggested in Colorado v. Connelly, supra. The remedy proposed is not an exclusionary rule. Identifications are tested by their reliability, not on the procedures used.
Suppressing evidence under the exclusionary rule upholds a Constitutional right by deterring police misconduct. Keeping an unreliable identification from the jury, does not deter future misconduct; it is designed to give defendant a fair trial today. There is a distinction with a difference between suppression and barring an unreliable identification. Evidence suppressed by an application of the exclusionary rule may be highly reliable. It is suppressed as a matter of policy. An impermissibly suggestive identification, that may result in a substantial likelihood of misidentification, is excluded out of basic fairness, not policy. We are not required to say that this basic fairness rises to the level of "fundamental fairness" implicating the Due Process Clause of the Fourteenth Amendment. There is no requirement that good practice always rise to the level of a constitutionally protected right. The Constitution does not contain all that is fair, just or important. Under the traditional Manson v. Brathwaite test only the most unreliable of identifications will be kept from the jury. Identifications will not be excluded merely because private citizens, unschooled in the intricacies of constitutional law and police procedure, make a misstep.
*225 Accordingly, the court finds that the defendant has made a threshold showing of impermissible suggestiveness and a pre-trial hearing is granted.
NOTES
[1] People v. Adams, supra, held that if a police supervised pretrial identification is suggestive, the prosecutor is barred from introducing any evidence of that procedure at trial. This differs from the U.S. Supreme Ct. holding in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, in that if a pretrial procedure is just somewhat suggestive, but not impermissibly suggestive, then the witness may not only make an in-court identification but testify as to the out-of-court identification as well. The N.Y.Ct. of Appeals grounded its decision on the N.Y. Constitution. The Court pointed out, "a reliable determination of guilt or innocence is the essence of a criminal trial ... permitting the Prosecutor to introduce evidence of a suggestive Pretrial identification can only increase the risk of convicting the innocent...." 34 Lewin, "Crim.Law & Procedure," Syracuse L.Rev. 173 at 197-198 (1983).