Virginia Carole **MADDOX,**
Plaintiff-Appellant,

v.

Elaine **LORD,** Superintendent Bedford Hills Correctional Facility,
Defendant-Appellee.

No. 478, Docket 86–2297.

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 1986.

Decided May 18, 1987.

Lawrence M. Stern, New York City, for plaintiff-appellant Virginia Carole Maddox.

Patricia A. Harrington, Asst. Dist. Atty., Riverhead, N.Y. (Patrick Henry, Dist. Atty. of Suffolk County, Riverhead, N.Y., of counsel), for defendant-appellee Elaine Lord.

Before OAKES, CARDAMONE and DAVIS,* Circuit Judges.

CARDAMONE, Circuit Judge:

The facts on this appeal from a denial of habeas relief are rather unusual. Petitioner, Virginia Carole Maddox, is currently incarcerated after being convicted of second degree murder. She had been married to the murder victim—her estranged husband—for 26 years and was the mother of their several adult children. One July morning when he insisted on coming into the family home to pick up some of his belongings, she shot and killed him. The evidence against her at a state non-jury trial was clear, and the testimony of the 14 expert and several lay witnesses produced by the prosecution supported her conviction for his murder. To sustain her federal habeas application, she contends that her husband's cruelty had pushed her to the perilous edge of sanity, a claim that she says her trial counsel failed to investigate and present sufficiently. The petitioner also contends that the supervising county district attorney prosecuted her for profit. Some small doubt remains—not over the evidence that petitioner shot and killed her husband—but whether her claims of extreme emotional disturbance and the presence of a biased prosecutor, which she now urges deprived her of the constitutional right to a fair trial, were adequately considered in the district court.

Convicted of murder in the second degree and criminal solicitation in the second degree in the shooting death of John William Maddox, petitioner was sentenced by the Suffolk County Court of New York to concurrent indeterminate terms of imprisonment of 15 years to life and two to six years on each conviction respectively. After exhausting state remedies, she brought a petition for a writ of habeas corpus before the United States District Court for the Southern District of New York (Knapp, J.) on the grounds that she had been denied effective assistance of counsel and that the

* Honorable Oscar H. Davis, U.S. Circuit Judge for the Federal Circuit, Washington, D.C., sitting by designation.

supervising district attorney had a financial interest in her conviction. The district court denied relief without a hearing. For the reasons that follow, we remand this matter to the district court for it to conduct a hearing on each of those issues.

## I

On July 14, 1980 petitioner shot and killed her husband with a rifle. The only issues at her state trial for this crime were whether petitioner had acted in self-defense or under extreme emotional distress. Mrs. Maddox's testimony before the grand jury was offered as part of her defense. She stated that after returning to her Long Island home from her night-shift nursing job at 7:00 a.m. and going to sleep, she was awakened by a telephone call from her husband who told her that he wanted to come to the house and pick up some of his belongings. She testified that because she was afraid of him she offered to leave his things on the porch. Because he became angry at her suggestion and threatened to break down the door, she agreed to let him come in to get what he wanted. She then went back to bed and fell asleep. Several hours later her husband drove his automobile into the driveway, blocking her car, she said, in a way that he had on previous occasions when, she claims, he had beaten her. She heard him enter the house and fumble in a drawer on the porch where she said an ice pick was stored. Some months earlier he had been stabbed by an unknown assailant with an ice pick and blamed her for the assault. She came out of her second floor bedroom carrying a rifle to scare him away, her testimony continues, saw him with an ice pick in his hand and then shot him three times as he came towards her.

The prosecution presented testimony by the Suffolk County Medical Examiner that demonstrated from the angles of the bullets that Mr. Maddox had not been facing petitioner when she shot him, but instead was facing his belongings in the living room. The forensic serologist also testified that the deceased when shot grabbed the right side of his neck and fell backwards to the right against a wall behind him. The expert concluded that if the deceased had been holding an ice pick it would have fallen to his right side, not to his left where it was later found by the police.

The victim's son, James, a prosecution witness, stated that the ice pick was kept in the kitchen, not in the front porch drawer where Mrs. Maddox claims she heard her husband get it. The son further testified that a few days prior to the incident, he had left the rifle disassembled. This implied that Mrs. Maddox assembled it with the intention of shooting her husband. The son also said that he had never seen his father strike his mother, contradicting his mother's testimony. Morgan Carey, an acquaintance of this son, testified that Mrs. Maddox had asked him to kill her husband for $30,000. She told him, he said, that she intended to borrow against her husband's life insurance policy to pay him. A lawyer for Mr. Maddox testified that petitioner had inquired about her husband's insurance policy and whether she would remain the beneficiary after their separation agreement was signed. Carey said that Mrs. Maddox paid him a $1,200 advance. Bank records confirm that Mrs. Maddox withdrew $1,200 from her account at the time in question. The prosecution argued that the forensic evidence presented at trial conclusively disproved Mrs. Maddox's claim of self-defense, and that petitioner's hiring of Carey and her reassembling of murder weapon proved the requisite element of intent to establish the commission of murder.

In petitioner's defense, her attorney offered only petitioner's grand jury testimony and three live witnesses. One co-worker testified that Mrs. Maddox was afraid of her husband and two friends testified to her kind, honest and non-violent reputation. The state trial court convicted petitioner of murder and the criminal solicitation of witness Carey. The Appellate Division, Second Department, affirmed without opinion and leave to appeal to the New York Court of Appeals was denied. 58 N.Y.2d 693, 458 N.Y.S.2d 1033, 444 N.E.2d 1020 (1982). Pursuant to New York Criminal Procedure Law, § 440.10 (McKinney 1983), petitioner

sought collateral review of her conviction on the grounds she presently asserts. That application as well as leave to appeal were both denied. Mrs. Maddox then brought the instant habeas application in federal district court pursuant to 28 U.S.C. § 2254 (1982). Although the district court denied her petition without conducting a hearing, it issued a certificate of probable cause to appeal.

## II

When the allegations of a habeas petition, if proved, would entitle a petitioner to relief, a federal court "must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court." *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). No hearing is warranted when the petitioner's claims are merely "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962). We believe that petitioner's allegations of ineffective assistance of counsel, if true, would entitle her to habeas relief. Because she was not given an evidentiary hearing in state court, the case must be remanded for a hearing before the district court on this issue. We need not decide the novel question presented by petitioner's second claim, that is, whether the prosecutor's alleged pecuniary interest in Mrs. Maddox's conviction—without a showing of further misconduct—would entitle her to a new trial. Instead, this claim is remanded to the district court to determine whether the prosecutor actually had such an interest. We consider petitioner's first claim.

### A. *Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, petitioner must show that her attorney's conduct fell below an objective standard of reasonableness and that the deficient performance prejudiced her defense. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). There is a "strong presumption" that counsel's conduct was reasonable and that any chal-

lenged action " 'might be considered sound trial strategy.' " *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690, 104 S.Ct. at 2066. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691, 104 S.Ct. at 2066. If an unreasonable error is shown, one seeking to establish this claim must further prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Petitioner's primary argument is that her trial counsel unreasonably neglected to investigate the affirmative defense of extreme emotional disturbance. Under New York law, "extreme emotional disturbance for which there was a reasonable explanation or excuse" is an affirmative defense to second-degree murder, the effect of which is to reduce the maximum charge to first degree manslaughter. N.Y. Penal Law § 125.25(1)(a) (McKinney 1975). Mrs. Maddox asserts on appeal that her trial counsel was aware of—but failed to interview—a potential witness, Dr. Harold Zolan, who was prepared to testify, as a result of his examination of petitioner and her prior history, that he had diagnosed her as being extremely emotionally disturbed prior to, and during, the commission of the crime.

The state argues that the decision not to interview Dr. Zolan was a strategic one made because Mrs. Maddox believed that she would be acquitted on her self-defense theory. Inasmuch as petitioner's trial counsel actually raised the defense of extreme emotional disturbance, the state's argument is not persuasive. Although defense counsel raised this defense, he failed to investigate and pursue it thoroughly

and, as it was petitioner's strongest defense to the charges, counsel's decision not to develop it cannot be said to be "sound trial strategy." In light of the evidence against Mrs. Maddox, failure to develop this defense was unreasonable.

Having concluded that her counsel's performance was unreasonable, we next consider whether such performance prejudiced petitioner's defense. The district court concluded that the failure to interview Dr. Zolan was not prejudicial because it concluded that Dr. Zolan's findings were based on an assumption that the victim actually came at his wife with the ice pick. Because the state trial court had rejected this version of the facts, the district court believed that "there would, as a matter of law be no possibility [the trial court] could have been swayed by the opinion [of Dr. Zolan]." After examining Dr. Zolan's two affidavits, we think that this finding is clearly erroneous. Although one of the two affidavits states that "the ice pick meant attack," neither supports an inference that Dr. Zolan's diagnosis was dependent on such assumption. Dr. Zolan, in the first affidavit, concludes that Mrs. Maddox's solicitation of Morgan Carey to kill her husband long before the shooting "would only serve to enhance the seriousness of the diagnosis." In the second affidavit, Dr. Zolan states that Mrs. Maddox was emotionally disturbed "prior to, and during the commission of the crime."

Thus, trial counsel's unreasonable failure to interview Dr. Zolan, together with the potential prejudice to her defense in not having the benefit of that doctor's testimony, entitles petitioner to a hearing. At the hearing Dr. Zolan's testimony should be thoroughly explored. As noted, under New York law, there must be a "reasonable explanation or excuse" for extreme emotional disturbance to be "determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." N.Y. Penal Law § 125.25(1)(a) (McKinney 1975). Upon remand, the district court must determine whether Dr. Zolan's testimony sufficiently supports these elements of the affirmative defense so as to "under-

mine confidence" in the outcome at petitioner's state trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ Further, petitioner contends that her trial counsel unreasonably failed to investigate the prosecution's forensic evidence. Even assuming the failure to be unreasonable, petitioner has not met the second prong of the *Strickland* test because she has not shown that such alleged failure prejudiced her defense. Although she offers an affidavit from an expert who will testify as to the path and trajectory of the bullets fired from the rifle, there is no indication that this evidence would be in any way exculpatory.

Bearing additionally on petitioner's claim of ineffective assistance is the recently received advice from petitioner's present counsel that Ira S. Dubey, the county forensic serologist, had plead guilty to committing perjury at petitioner's trial by testifying falsely regarding his academic credentials. Perjury of a key government witness may well entitle petitioner to some form of relief in a future proceeding, but because that issue was not before the district court it is not one that we will consider on appeal. Analyzed in connection with the denial of effective assistance claim, we observe that Mrs. Maddox does not contend that her trial counsel's failure to investigate the expert's credentials was itself unreasonable, but rather that the falsified credentials indicate that the expert's testimony was not reliable. If her trial counsel had reasonably investigated the expert's testimony, she argues, he would have found evidence contradicting that testimony. Petitioner's assertion is unpersuasive in the absence of any evidence directly contradicting the state's forensic expert. Without such direct evidence prejudice cannot now be assumed.

■ Petitioner also claims that her trial counsel unreasonably failed to call Michael Viale as a witness to rebut the damaging testimony of Morgan Carey. We can hardly question the attorney's choice when, despite some inconsistencies, the overall import of Viale's testimony would simply con-

firm the fact that Mrs. Maddox had asked Carey to murder her husband.

### B. *The Supervising Attorney's Pecuniary Interest in Conviction*

■ We turn to the second claim in which petitioner alleges that the supervising District Attorney, Thomas Spota, Esq., had a pecuniary interest in her conviction. Mr. Spota was not the active prosecutor of Mrs. Maddox; he supervised the assistant district attorney who represented the people at trial. But it is alleged that he had an active role in determining the course of the prosecution.

The state concedes that nine months after petitioner's sentencing, Mr. Spota entered into private practice with Gerard Sullivan, Esq., who represents both Maddox sons in litigation over the disposition of their father's estate and had been representing at least one of the sons in that connection during petitioner's trial. Under New York law, if Mrs. Maddox is convicted of her husband's murder, she is precluded from any share of his estate. The sons' shares in their father's estate would thus be greater. Since the Maddox sons' claims against the estate had been taken on a contingent basis, the law firm in question obviously benefits financially from Mrs. Maddox's conviction. For that reason petitioner argues that if the two attorneys had agreed before or during her trial to enter private practice together Mr. Spota would have had a pecuniary interest in her conviction.

We agree with the district court that no specific act of prosecutorial misconduct that might be connected to Mr. Spota's alleged pecuniary interest has been claimed. The trial judge also correctly found that the formation of a partnership nine months after sentencing would not, standing alone, demonstrate any improper interest on the part of the district attorney. Yet, we conclude that here too the district court should have conducted further inquiry into petitioner's claim that the partnership was agreed upon before or during her trial.

We realize that this claim is for the most part conjectural. But, it is based on the undisputed fact that *at some point* Assistant District Attorney Spota and Mr. Sullivan agreed to form a partnership. The evidence of when this event took place plainly is not within Mrs. Maddox's knowledge. Hence, she is unable to be more specific, but deserves an opportunity to prove her claim. As the Supreme Court held in *Machibroda,* "the specific ... factual assertions of the petitioner, while improbable, cannot at this juncture be said to be incredible." 368 U.S. at 496, 82 S.Ct. at 514. Therefore, petitioner is entitled to further factual inquiry on the claim of prosecutorial misconduct.

We hasten to add that in remanding on this issue, we are not suggesting that if petitioner's allegations that the partnership was agreed upon before or during petitioner's trial is shown to be true, that she is then necessarily entitled to habeas relief. Neither we, *see Wright v. United States,* 732 F.2d 1048, 1057 (2d Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985), nor the Supreme Court, *see Marshall v. Jerrico, Inc.,* 446 U.S. 238, 250 & n. 12, 100 S.Ct. 1610, 1617, 64 L.Ed.2d 182 n. 12 (1980), has had an opportunity to decide whether a prosecutor's pecuniary interest in an accused's conviction is, in itself, a violation of due process. Since this sensitive constitutional question may disappear depending on what facts are found, we need not now reach out to decide it. *See, e.g., Youakim v. Miller,* 425 U.S. 231, 236, 96 S.Ct. 1399, 1402, 47 L.Ed.2d 701 (1976) (per curiam) ("A remand is thus consistent with our usual practice of avoiding decisions on constitutional matters if a cause may be resolved on other grounds."). Moreover, even if petitioner's allegations are proved, the district court should rule in the first instance on the legal significance of such findings.

### CONCLUSION

Accordingly, the case is remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.