**Ronald BENEDICT, Petitioner,**

v.

**Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Respondent.**

No. 87–CV–1019.

United States District Court, N.D. New York.

Oct. 10, 1989.

---

Hinman, Howard & Kattel, Binghamton, N.Y., Albert J. Millus, Jr., of counsel, for petitioner.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, Robert A. Siegfried, Asst. Atty. Gen., for respondent.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Senior District Judge.

The petition in this habeas corpus proceeding was lawyer prepared and is an exemplary one in form and content. The one petition challenges two separate judgments of conviction entered in Broome County Court based upon separate indictments and jury trials. The first judgment of conviction of petitioner was entered March 6, 1984 for Attempted Murder Second Degree and Robbery First Degree. The second judgment of conviction was entered July 12, 1984 for Burglary Third Degree. On the separate counts of attempted murder and robbery, the petitioner was sentenced to 12½ to 25 years to run concurrently. On the burglary conviction several months later after a separate jury trial, the petitioner was sentenced to 3½ to 7 years consecutive to the attempted murder and robbery sentences. Attorney Millus was the assigned counsel for petitioner in the New York Appellate Courts and also filed petitions for Certiorari in each case in the United States Supreme Court that were denied. The citation of these appellate decisions are set forth in the petition, and copies are attached to the petition as exhibits.

Ground 1 of the petition concisely sets forth the facts in support of the claim, that at the trial of petitioner for attempted murder and robbery, the petitioner then represented by the Broome County Public Defender's Office, was denied the right of effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Ground 2 of the petition relates to the Burglary conviction and sets forth briefly the facts to support the claim that he was convicted at that trial by the selective use of the prosecutorial immunity power in violation of the Fifth Amendment to the United States Constitution.

In a substantial Report–Recommendation of sixteen pages dated June 22, 1989, Magistrate Gustave J. DiBianco made detailed

findings and analysis of the pertinent case law. He recommended that the petition challenging the separate convictions be denied and dismissed. In footnote 1 of page 2 of the Report–Recommendation, the Magistrate notes the vast accumulation of state court records filed with the Answer of Respondent, together with a memorandum of law that was replied to by the attorney for petitioner. The final submissions at this review level were extensive objections to the Report–Recommendation filed by petitioner on July 19, 1989, and a reply thereto by Assistant Attorney General Siegfried filed August 11, 1989. I have read through the relevant portions of the state court records and briefs to be considered in this federal application for habeas corpus relief.

In the petition and brief in support, the factual circumstances claimed to have been ineffective representation of trial counsel in the murder-robbery trial are pinpointed. The Magistrate reviews them on pages 5 and 6 with specific references to the trial transcript. Outside of the presence of the jury, the transcript at that stage of the trial indicates defense counsel stating to the court that the petitioner/defendant wished to testify despite his advice not to do so. Counsel stated that he had advised petitioner/defendant that his previous felony conviction could be brought out and he would be subject to thorough cross-examination. Counsel also told the Court in presence of the petitioner/defendant that he had made him aware of his general position and opinions regarding the case and that likelihood of success in his favor was minimal. The petitioner/defendant insisted and was called to the witness stand by his counsel and was duly sworn. His counsel only asked him several preliminary questions, including one for disclosure of his previous felony conviction, then asked him to tell his knowledge regarding the incident that took place in a Binghamton restaurant on a certain date. Trial Transcript (Tr.T) pgs 97–100. Then petitioner/defendant gave rambling testimony in narrative fashion to the effect that he did not participate in the stabbing and robbery that took place in the restaurant but was at the scene as a lookout for the actual robber whom he never named. At its conclusion, defense counsel only asked if there was anything he wished to add and when petitioner/defendant said he did not believe so, his counsel asked in conclusion if he were left or right handed (Tr.T 101–104). This question related to the testimony of a Doctor that the wounds of the victim had an entry point on his left side (Tr.T 77, 121–122).

This particular conduct of trial counsel is pointed out as serious error in allowing the petitioner to give his testimony about his involvement only as a lookout in his own narrative way without the guidance of direct questioning by his counsel. It is upon this alleged failure of appropriate questioning that the main reliance is placed to support the claim of ineffective assistance of counsel that rises to the stature of a federal constitutional deprivation. The noted case of the United States Supreme Court, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) prescribes the standards and principles to be applied to challenges of this kind. Petitioner has the burden to show that counsel's performance fell below an objective standard of reasonableness and that there was incompetence and resulting prejudice. *Strickland v. Washington*, supra, pgs. 687–688, 104 S.Ct. pgs. 2064–2065; *Kimmelman v. Morrison*, 477 U.S. 365, 381–382, 106 S.Ct. 2574, 2586–2587, 91 L.Ed.2d 305 (1986). Petitioner must also show that there existed a reasonable probability of a different result in the proceeding but for the errors of counsel that might have fallen below an objective standard of reasonableness. *Mills v. Scully*, 826 F.2d 1192, 1197 (2d Cir.1987); *Maddox v. Lord*, 818 F.2d 1058, 1061 (2d Cir.1987).

■ Applying the established principles and standards of the above authorities, from my review, it is my judgment that the petitioner not only fails to sustain his burden of showing that his trial counsel representation was not reasonably effective but also that the limited error alleged in his performance might have been serious enough to affect and change the jury guilty verdict. In *Strickland*, 466 U.S. at 697,

104 S.Ct. at 2069–2070, it is ruled that if it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice, that course should be followed. The evidence against the petitioner is detailed by the Appellate Division in 124 A.D.2d 890, 508 N.Y.S.2d 656. Magistrate DiBianco in his Report–Recommendation, p. 10 summarizes the prosecution evidence:

"The prosecution had a *Miranda* rights waiver signed by petitioner, a two-page written statement by petitioner acknowledging his guilt and specifying the details of the crimes, a pre-trial photo and line-up identification as well as in court identification of petitioner by the victim who was stabbed during the robbery, recovery of the weapon at the precise location where petitioner told police it was, testimony from a witness who related that petitioner had told her he was planning a crime and that he needed a weapon, and another witness who testified that petitioner told her that he was leaving New York State because the police were looking for him because he had stabbed a man while robbing a restaurant. TT at 82–84, 29, 31, 17, 19, 36, 43–46."

The objections filed to the Report–Recommendation, p. 5, concede that there was much evidence against the petitioner. I find no fault with the characterization of the Magistrate that such evidence was overwhelming and that petitioner's testimony given at the trial even if it had been guided by direct questioning would not have altered the outcome of the trial. The second prong of the *Strickland* test is definitely not satisfied.

■ In view of that conclusion, it may be unnecessary to grade trial counsel's performance. *Strickland v. Washington,* 466 U.S. at 697, 104 S.Ct. at 2069–2070; *Nix v. Whiteside,* 475 U.S. 157, 188, 106 S.Ct. 988, 1005, 89 L.Ed.2d 123 (1986, Blackmun J. concurring). However, if necessary, I would grade it, without question, reasonably effective and without serious deficiency. The Appellate Division, Third Department found the representation meaningful, that counsel was adequately prepared, vig-

orously advanced defendant's cause and employed the basic principles and techniques of criminal procedure. 124 A.D.2d at 891, 508 N.Y.S.2d 656. Magistrate DiBianco elaborated further upon the efforts of trial counsel with the conclusion that counsel diligently represented petitioner throughout the pre-trial proceedings as well as the trial. Report–Recommendation, pp. 8–9.

In regard to the omission of direct questioning, it is my judgment that the most skillful examiner in that respect could not have made persuasive or convincing the position and testimony of petitioner that he only participated as a lookout at the scene of the robbery. Trial counsel had to walk a fine line in presentation of such testimony when weighed against the considerable prosecution evidence to the contrary. Although not so expressed, it is evident that trial counsel had justifiable doubts about the truth of that position. I think he acted sensibly and preserved the continuance of the trial and the confidence of petitioner by his careful statements for the record. By allowing the narrative form of testimony without intrusion of direct questions, the obligation was met not to assist in any way presenting false evidence or otherwise violating the law. *Nix v. Whiteside,* 475 U.S. 157, 166, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1987). Counsel's conduct was consistent and in compliance with the recommendation in New York Code of Professional Responsibility, Ethical Considerations 7–5, 7–6, 7–26; Disciplinary Rule 7–102. The recommendation is that if counsel suspects his client is going to lie, he can do no more than assist his client to deliver his statement in narrative form as opposed to eliciting the perjurious testimony by questioning, thereby promoting perjury. Report–Recommendation, p. 7. I find nothing in *Nix v. Whiteside* that such approved conduct measures up to a Sixth Amendment violation as is contended for petitioner. In fact *Nix v. Whiteside,* 475 U.S. at 165, 106 S.Ct. at 993 reiterates the *Strickland* mandate that prevailing norms of practice as reflected in American Bar Association Standards and the like are only guides. It is further cautioned that "when examining

attorney conduct, a court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct and thereby intrude into the state's proper authority to define and apply the standards of professional conduct applicable to those it admits to practice in its courts". *Id.*

In the objections for petitioner, it is complained that the Magistrate in his Report–Recommendation failed to consider or even mention the primary case relied upon by petitioner, *Ferguson v. Georgia,* 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). As the Respondent reply states, the rulings in that case are inapplicable factually and legally to this situation. The vague and general challenges concerning coerced confession and identification problems were not raised to the Magistrate by the petition or in the State Appellate Courts and are not properly before this court. On reliable identification it is interesting to read the testimony of the victim at the Suppression hearing held before Judge Robert W. Coutant on December 21, 1983.

The petition for federal habeas corpus relief in regard to the Attempted Murder and Robbery convictions is denied and dismissed.

## II.

### The Burglary Conviction

As previously stated, the challenge to this conviction, rendered at a separate trial from the murder-robbery one, is that it was obtained by the selective use of the immunity power in violation of petitioner's due process rights under the Fifth Amendment to the United States Constitution. The material facts relevant to the claim are contained in the transcript of the Burglary trial at pages 213 to 220. It appears that the petitioner's defense counsel attempted to call as a witness, a co-defendant, who had pleaded guilty to the same crime with which petitioner was charged and then being tried. An offer of proof stated by counsel was that this witness would testify that petitioner was not involved in the burglary. An attorney was appointed to advise the witness of his Fifth Amendment rights since his own case was on appeal. The prosecution refused to request the court to grant the witness immunity. The court then advised the witness it was not empowered to grant immunity. After further discussion, the witness stated it was his intention to claim his privilege against self-incrimination. The court would not permit the witness to testify on direct examination knowing that the witness intended to take his privilege on cross-examination, reasoning that the prosecution would be deprived of effective cross-examination. Tr.T (Burglary) 218–219. The defendant then testified and denied any involvement in the crime. A summary of these facts are contained in the petition herein for habeas corpus (pp. 5–6) and in the Appellate Division, Third Department, Memorandum decision affirming the judgment of conviction. *People v. Benedict,* 115 A.D.2d 795, 495 N.Y.S.2d 735 (1985).

At the outset, there is presented the substantial question that review of this federal habeas corpus petition is barred by an adequate and independent finding of procedural default in the New York Courts unless petitioner can show "cause and prejudice". *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Engle v. Isaac,* 456 U.S. 107, 110, 102 S.Ct. 1558, 1562–1563, 71 L.Ed.2d 783 (1982). The appeal in this burglary conviction to the New York Court of Appeals was by permission of an Associate Judge of the Appellate Division, Third Department. The Summary in the decision of the Court of Appeals states that "defendant argued that his due process right to a fair trial was violated when the People declined to request immunity for the prospective witness". The opinion of the Court affirmed the Order of the Appellate Division stating "The only issue raised by appellant cannot be reviewed by this Court because not preserved (C.P.L. 470.05[2] ). *People v. Benedict,* 68 N.Y.2d 832, 833, 508 N.Y.S.2d 175, 500 N.E.2d 873 (1986). A motion for reargument on this point was denied without opinion. 68 N.Y.2d 998, 510 N.Y.S.2d 1029, 503 N.E.2d 126 (1986).

C.P.L. 470.05[2], N.Y.Crim.P.Law, has been described by the United States Supreme Court as embodying New York's cautious contemporaneous-objection policy and notes its judicially created exceptions. *Ulster County Court v. Allen,* 442 U.S. 140, at pp. 150–151, nn. 8–9, 99 S.Ct. 2213, at pp. 2221, nn. 8–9, 60 L.Ed.2d 777 (1979); *see also Wainwright v. Sykes,* supra, 433 U.S. 72, at 88–89, 97 S.Ct. 2497, at 2507–2508, 53 L.Ed.2d 594 (1977). In this instance, the verbatim statement of trial counsel in regard to the refusal of the People to request immunity for the prospective witness is contained in the transcript of the burglary trial. Tr. pp 219–220. This statement and the complete provisions of C.P.L. 470.05 are set forth in Respondent's Memorandum of Law attached as Ex. A, pp. 13, 14. Reply to Petitioner's Objections to the Report–Recommendation.

The New York Court of Appeals by specific reference to C.P.L. 470.05[2] ruled by its brief opinion that the issue of violation of right to a fair trial by declination to request immunity for a prospective witness was not properly preserved. The denial of a motion for reargument reaffirmed that position. This interpretation of non-compliance with New York's criminal law by its highest Court is entitled to respectful acceptance in this federal habeas corpus proceeding.

The United States Supreme Court has made a recent ruling to overcome confusion that existed in the application of the procedural default rule. The common solution is that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case *"clearly and expressly"* states that its judgment rests on a state procedural bar. *Harris v. Reed,* —— U.S. ——, —— ——, 109 S.Ct. 1038, 1042–1045, 103 L.Ed.2d 308 (1989, emphasis supplied). The reference to the New York contemporaneous-objection rule is surely clear and express as to where the New York Court of Appeals rested its judgment. A very recent opinion by the Court of Appeals, Second Circuit, affirming the denial of federal habeas corpus, answers the contentions of petitioner herein that procedural default does not lie inasmuch as the decision of the New York Court of Appeals was sua sponte and that the procedural bar issue was not raised in the Appellate Division, Third Department, which decided without objection of the prosecution the immunity issue on the merits. The Second Circuit stated that the ruling of the New York Court of Appeals being sua sponte on a similar issue is of no consequence, and the failure of the prosecution to argue a procedural bar does not disable a state court from recognizing one where it exists. *Jacquin v. Stenzil,* 886 F.2d 506 (2d Cir.1989). In the instance here, the Court of Appeals, the highest and last Appellate Court in New York rendered a clear judgment in the case based expressly upon a procedural bar.

■ I agree with the reasoning and supportive case law set forth by the Magistrate in his Report–Recommendation at pp. 11–13 that petitioner has not shown "cause" for the procedural default and actual "prejudice" from the alleged constitutional violation. The issue of immunity for a witness had been reviewed several times in the New York Court of Appeals, and it cannot be said that the claim was so novel that its legal basis was not reasonably available to trial counsel. *See People v. Adams,* 53 N.Y.2d 241, 247–48, 440 N.Y. S.2d 902, 423 N.E.2d 379 (1981); *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). The substantial evidence against petitioner, detailed in the Report–Recommendation at p. 13, the fact that petitioner took the stand and testified that he did not participate in the crime as the prospective co-defendant witness similarly would have testified, does not indicate in my judgment that the alleged error of refusal of witness immunity deprived petitioner of a fair trial. *See Holland v. Scully,* 797 F.2d 57, 69 (2d Cir.1986).

In his Report–Recommendation, pp. 14–16, Magistrate DiBianco after assuming petitioner was able to overcome the procedural default, still recommends denial of the habeas corpus application challenging the

burglary conviction. This position reaches the merits of the issue. Although I am firm in my conviction that procedural default has been established and bars this consideration, in view of the prolonged history of review, I accept this alternative recommendation. I find the reasoning of the Magistrate on the merits sound and his analysis and application of the pertinent case law correct. If necessary, I would also deny the application on the merits.

The Appellate Division, Third Department, discussed the issue of the declination to grant immunity to a prospective defense witness and found no merit in the assertion. *People v. Benedict,* 115 A.D.2d 795, 796, 495 N.Y.S.2d 735 (1985). The opinion observed that only a single witness for the People was immunized, and there was no impermissible building of the People's case or indication of bad faith or misconduct on the part of the prosecution. It points out that under New York Crim.Proc.Law 50.30 the prosecution alone has the power to obtain immunity for witnesses and under the factual pattern cannot be faulted under New York law for being unwilling to confer immunity. An important factor was that there existed the possibility that the witness might avoid prosecution for a past crime. These reasons are persuasive and strongly supported by the trial record.

Federal case law on the immunity claim is similar. In *United States v. Turkish,* 623 F.2d 769, at 778 (2d Cir.1980), cert. denied 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981), the thought was expressed that a trial judge should summarily reject claims for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target for prosecution. *Grochulski v. Henderson,* 637 F.2d 50, 52 (2d Cir.1980) noted that immunity in New York is full transactional immunity and therefore is a serious and justifiable consideration in the exercise of the prosecution power under N.Y.Crim.P.Law 50.30. The testimony implicating the petitioner in the burglary crime included the testimony of two accomplices in its participation and five other witnesses who testified petitioner admitted he had committed the crime. In the context of the entire record, it is difficult for me to accept the argument that the omitted testimony of the prospective accomplice witness, in itself only corroborative of petitioner's actual testimony, would have created reasonable doubt. *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.1983).

The Report–Recommendation of the Magistrate is accepted and adopted. The objections of petitioner to it are overruled for the reasons stated herein. The petition is denied and dismissed in its entirety.

It is so Ordered.