89 F.3d 826
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Robert HERSHMAN, Defendant,
James J. KELLEHER, also known as James Kelly, Defendant-Appellant.
 No. 95-1212.
 United States Court of Appeals, Second Circuit.
 Nov. 29, 1995.
 
 1
 Appeal from the United States District Court for the Eastern District of New York (Wexler, Judge).
 
 
 2
 STEPHEN P. SCARING, Stephen P. Scaring, P.C., Garden City, NY.
 
 
 3
 ILENE JAROSLAW, Assistant United States Attorney, Eastern District of New York.
 
 
 4
 E.D.N.Y.
 
 
 5
 AFFIRMED.
 
 
 6
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued by counsel.
 
 
 7
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 8
 Defendant James Kelleher appeals from his conviction on seven counts of mail fraud, in violation of 18 U.S.C. § 1341, claiming numerous errors by the district court. For the reasons set forth below, we conclude that none of Kelleher's claims is meritorious, and we affirm his conviction.
 
 
 9
 Kelleher was a self-employed engineer, doing business under the names Jim Kelly and Prime Dimensions, who was hired by insurance companies to advise concerning the damage to commercial and residential properties that were the subject of claims. Kelleher would report to the company's general adjuster, who would assess the losses and make offers to the insureds. The insured party, in turn, would be represented by an outside expert, called a public adjuster. After the general adjuster and the public adjuster negotiated a settlement amount, the claim would be submitted to the insurance company for approval and payment.
 
 
 10
 Eight counts of a fifteen-count superseding indictment were dismissed prior to trial, leaving seven counts of mail fraud. It was alleged that Kelleher had participated in the falsification of two insurance claims that were submitted to the Chubb Insurance Company ("Chubb") in 1989 by its insured, United Utensils. Kelleher allegedly inflated his expert assessment of the damage in exchange for a cash bribe. The other alleged participants in the scheme were Alan Rosenkranz, the owner of United Utensils; Seymour Berson, a public adjuster; and Nicholas Addesa, the Chubb general adjuster handling the United Utensils claims.
 
 
 11
 Before trial, the Government moved for a ruling in limine to allow the admission of evidence that Kelleher had engaged in a similar fraud involving a United Utensils claim in 1986. This fraud involved the same persons allegedly involved in the charged 1989 schemes, except that the Chubb general adjuster at that time was Michael Kelleher--the defendant's brother and Addesa's predecessor. The Government asserted that the nature of the alleged 1989 schemes required the various participants to know and be able to trust each other, and that the prior act evidence was necessary to show the development of a relationship of trust among James Kelleher, Berson, and Addesa. The district court made two in limine rulings: (1) the Government could present evidence that James Kelleher's alleged co-conspirators were involved in the 1986 fraud, so long as there was no reference to James Kelleher's involvement in it; and (2) the Government could present evidence that James Kelleher had approached Addesa regarding the 1989 schemes, vouching for himself by reference to his prior (unspecified) dealings with Michael Kelleher.
 
 
 12
 In his testimony at trial, Berson described the 1986 scheme without mentioning James Kelleher's name and explained the roles of Rosenkranz, Michael Kelleher, "an engineer" (actually James Kelleher), and others. However, in describing the January 1989 fraud, Berson said he explained to Rosenkranz that Addesa would take Michael Kelleher's place, but that the same experts would be used as in 1986, including "Jim Kelly as the engineer." (The jury knew that the defendant did business as Jim Kelly.) Defense counsel objected, but he declined a curative instruction so as to avoid highlighting the reference. Shortly after the trial resumed, Berson testified that, "similar to the first claim," he and Addesa agreed that Addesa would pay "Mr. Kelly." Defense counsel objected again and moved for mistrial. The motion was denied; instead, the court gave a curative instruction to the jury. Berson went on to testify that, when he met with James Kelleher in connection with the January 1989 claim, James Kelleher told Berson that (1) Addesa had vouched for Berson; (2) James Kelleher was willing to participate in the current scheme; and (3) James Kelleher had worked with Addesa and Michael Kelleher on other claims in the past.
 
 
 13
 On appeal, James Kelleher draws our attention to three other passages of testimony from which the jury might have deduced that the defendant participated in the 1986 fraud. First, Addesa testified to a conversation in which Berson said that, on a prior claim, Berson had used Prime Dimensions, which was known to the jury as the defendant's company. Defense counsel made no objection to this statement. Second, Rosenkranz testified that Berson told him that the January 1989 scheme would use the same team used in 1986, with the exception of one person associated with Chubb. Since this testimony followed Berson's, the jury already knew that Addesa had replaced Michael Kelleher by 1989; thus, the jury could infer that if defendant was involved in the 1989 claims, he was also on the 1986 team. Defense counsel made no objection. Third, Michael Biegelman, a United States postal inspector, testified that James Kelleher had told him initially that he had refused to inflate the 1986 United Utensils claim. Again, the defense did not object.
 
 
 14
 Addesa also testified that Michael Kelleher had reassured him that James Kelleher was reliable, because the Kellehers had worked together in the past. Defense counsel did not object. In this appeal, James Kelleher contends that this statement was impermissible hearsay.
 
 
 15
 Biegelman also testified on cross-examination as to the credibility of Berson, a co-conspirator cooperating with the Government. After a confusing exchange between the prosecutor and defense counsel, the district court permitted Biegelman to finish a statement, in which he testified that he believed Berson was a truthful informant because he had named various people (including Addesa and Michael Kelleher) who had all pled guilty "in this very Court."
 
 
 16
 On April 11, 1995, James Kelleher was convicted on all counts.
 
 
 17
 On appeal, James Kelleher claims that the district court committed plain error within the meaning of Federal Rule of Criminal Procedure 52(b) when it permitted the prosecution to offer any prior act evidence of the 1986 scheme, because the court failed to realize that the Michael Kelleher involved in the 1986 scheme was the defendant's brother, and it thereby failed to appreciate the extraordinary danger of prejudice created by the sibling relationship.
 
 
 18
 We will not conclude that a district court has committed plain error under Rule 52(b), unless we find (1) that there was error, (2) that the error was plain, and (3) that the error affected substantial rights. United States v. Olano, 113 S.Ct. 1770, 1776 (1993). This decision is confided to the sound discretion of the court of appeals, but "the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks and citations omitted).
 
 
 19
 Paragraph 13 of the second superseding indictment states that Michael Kelleher and James Kelleher are brothers. The record shows that the district judge was confused by the references to two Kellehers at one point during the in limine hearing. At trial and before the jury, however, the district court required Berson to distinguish between Michael Kelleher and James Kelleher in his testimony, and the prosecutor implemented this instruction. While the district court may not have referenced the fact that the two men were brothers, the court was clearly concerned about potential jury confusion between them and took steps to minimize that confusion.
 
 
 20
 In these circumstances, we cannot conclude, as James Kelleher contends, that the court was unaware of the fraternal relationship and failed to consider it in making its in limine rulings. Moreover, even if the district court did not realize that the Kellehers were brothers, the defendant does not articulate why this fact is so prejudicial as to outweigh the undisputed relevance of the prior act evidence. We therefore find there was no plain error in the in limine rulings.
 
 
 21
 James Kelleher claims that the district court erred in denying his motion for mistrial during Berson's testimony and in failing to declare a mistrial notwithstanding three subsequent alleged breaches of the in limine rulings.
 
 
 22
 We observe that a denial of a motion for mistrial is reviewable only for abuse of discretion. United States v. Marshall, 458 F.2d 446, 451 (2d Cir.1972). The district court did not abuse its discretion in denying the motion for mistrial. On both occasions that Berson's testimony strayed from the in limine rulings, defense counsel objected. After the first objection, defense counsel asked the court to do nothing. After the second objection, the court gave a clear curative instruction: the jury was not to consider defendant's alleged participation in the 1986 scheme. The two offending references were fleeting passages in Berson's lengthy testimony.
 
 
 23
 As to the three subsequent alleged breaches, James Kelleher cites no authority for the proposition that, once a motion for mistrial is denied following the introduction of testimony excluded by an in limine ruling, the motion is deemed continuing. We need not consider this specific question, because we find that none of the three subsequent alleged breaches furnished a ground for mistrial.
 
 
 24
 First, Addesa's testimony that Berson had told him he had used James Kelleher's company on "a prior loss" was permitted by the in limine ruling, because that statement did not connect the defendant with anything in 1986. Second, Rosenkranz' testimony indicating that the January 1989 scheme would employ the same team used in 1986 (except for Michael Kelleher) was an indirect reference connecting the defendant to the 1986 scheme; but the district court's failure to declare a mistrial in order to remedy this attenuated violation of an in limine order, as to which no objection was recorded, does not rise to the level of plain error. Third, James Kelleher's statement (as recounted by Biegelman) that he had refused to inflate the 1986 United Utensils claim does not necessarily harm the defendant, and it cannot be expected to provoke a mistrial, particularly without an objection.
 
 
 25
 James Kelleher next cites the following testimony by Addesa: "I called Mike Kelleher and ... asked him is it okay to deal with Mr. Kelly and he said he was all right, he had worked with him.... " Defendant asserts that the district court committed clear error by admitting this testimony, even in the absence of a hearsay objection. However, this statement (disturbing as it is) was arguably admissible for its reassuring effect on Addesa and to show the formation of the trust necessary for the success of the particular scheme, rather than for its truth. Moreover, the statement did not prejudice James Kelleher, because Berson had by then already testified to the admission of James Kelleher that "[h]e would work the same way he worked with [Michael] Kelleher." There was no plain error.
 
 
 26
 James Kelleher's next claim is that the district court erred in allowing Biegelman, the postal inspector, to bolster the credibility of another prosecution witness by referencing the guilty pleas entered by other people that informant had identified. During Biegelman's cross-examination, defense counsel suggested that Biegelman could not always ascertain whether an informant was making a false accusation, and invited Biegelman to agree. Biegelman agreed, but added that he did not believe that had happened in this case, and "I know this case better than any other case I have done in 21 years, and I will tell you why. Sy Berson--"At this point, defense counsel interposed the syllable, "Well--" and the prosecutor objected. It is not clear on what ground the prosecutor was objecting, and it is unclear whether defense counsel was objecting at all. The court allowed Biegelman to finish, and Biegelman then explained his confidence in Berson's reliability by reference to the number of persons, identified by Berson as participants in insurance schemes, who had pled guilty.
 
 
 27
 Assuming that defense counsel had made an objection that was overruled by the court, there was no abuse of discretion. Biegelman's damaging testimony was elicited by defense counsel on cross-examination during questioning that sought to cast doubt on Berson's credibility. None of the authorities cited by defendant supports a conclusion of abuse of discretion.
 
 
 28
 James Kelleher further claims that he was deprived of effective assistance of counsel, because his attorneys were inexperienced and ill-prepared to a degree that affected defendant's substantial rights. Under the controlling standard, defendant must show (1) that counsel's performance "fell below an objective standard of reasonableness," and (2) this deficient performance prejudiced the defense by depriving him of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687 (1984). Moreover, there is a strong presumption that counsel's conduct at trial was reasonable, and that any challenged conduct "might be considered sound trial strategy." Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana., 350 U.S. 91, 101 (1955)); Maddox v. Lord, 818 F.2d 1058, 1061 (2d Cir.1987).
 
 
 29
 The errors cited by James Kelleher as demonstrating ineffective assistance of counsel are essentially a recasting of the events already discussed above: (1) counsel's failure during the in limine hearing to notify the court that Michael Kelleher is the defendant's brother, (2) counsel's failure to "confront" the unfavorable testimony by Biegelman, and (3) counsel's failure to object to Addesa's testimony of Michael Kelleher's hearsay statements.
 
 
 30
 As to the first alleged error, James Kelleher does not explain how bringing the fraternal relationship to the district court's attention would have affected the in limine ruling. As discussed above, it was undisputed that the evidence relating to the 1986 scheme was relevant, and it is not clear why the fact of the relationship made that evidence prejudicial. Moreover, defense counsel vigorously opposed the government's in limine motion, and he did succeed in narrowing the scope of the prosecution's evidence concerning the 1986 scheme.
 
 
 31
 Counsel's decision to cross examine Biegelman on the credibility of cooperating witnesses was a tactical decision. United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1987). When Biegelman's testimony started to take a nasty turn, counsel interposed what may have been an objection. The decision to seek no corrective instruction after Beigelman's testimony was given, and thereby risk further emphasis on that testimony, is defensible in the circumstances.
 
 
 32
 Finally, counsel's failure to object to Addesa's testimony cannot be deemed ineffective assistance because, as we have already ruled, that testimony did not violate the in limine rulings.
 
 
 33
 We cannot conclude that defense counsel's conduct at trial fell below Strickland 's objective standard of reasonableness, although a close question was presented by counsel's open-ended examination of Biegelman. Therefore, we reject the claim of ineffective assistance of counsel.
 
 
 34
 Finally, James Kelleher claims that one count of his conviction was barred by the statute of limitations. Although the grand jury voted for the indictment within the limitations period, the defendant points out that the indictment itself was not filed until one day after the period ended. The statute, 18 U.S.C. § 3282, requires only that the indictment be "found" within the period; there is no textual filing requirement. James Kelleher's claim rests on one 1979 district court case that is not on point and a Federal Rule of Civil Procedure. Under Federal Rule of Criminal Procedure 6(f), an indictment is "found" upon agreement by twelve or more grand jurors. Defendant's limitations argument is therefore frivolous.
 
 
 35
 For the reasons set forth above, we affirm James Kelleher's conviction on all counts.