OPINION OF THE COURT
Wachtler, J.
 Defendant appeals from an order of the Appellate Division affirming his conviction for robbery. The novel issue on the appeal is whether testimony of a station house showup should have been excluded as a matter of State constitutional law. Defendant also contends that he was denied his right to present witnesses on his behalf when the prosecutor refused to grant immunity to one of the defendant’s prospective witnesses. The conviction should be affirmed.
At 4:30 on the afternoon of August 29, 1975, three men entered a Bronx stationery store owned by Sabet Mangoubi and his wife. At the time Mangoubi was behind the cash register, his wife was on the other side of the counter and their nephew, Abraham Darwish, was working in the front of the store.[1] One of the three men, later identified as the defendant, held a gun to Mrs. Mangoubi’s head and either announced a holdup or demanded money. One of the other robbers then took $42 from the cash register. After the men had been in the store for five or ten minutes Mr. Mangoubi screamed and the men ran out with Darwish and his uncle in pursuit.
As they ran from the store the robbers were observed by Luis Rodriguez, a private security guard on his way to work, and Officer Harrison who was on patrol in a police car across the street from the store. Officer Harrison made a U turn and started after the robbers while Rodriguez, Mangoubi, Darwish and several others chased them on foot. When the robbers reversed direction one of them, identified as Orlando Sanabria, was apprehended by Rodriguez. The other two men successfully fled the scene. A bag taken from Sanabria contained approximately $42. The police also re *246 covered an imitation pistol discarded by the defendant as he ran from the store.
As a result of information obtained from Sanabria, defendant and Louis Gaston were arrested at a Bronx apartment later that afternoon. Defendant was found hiding in a closet and Gaston was hiding behind a bathroom shower curtain.
At 6:30 or 7 o’clock that evening the Mangoubis and their nephew identified the defendant and the other two men at the station house. Before viewing the men a police officer informed the victims that he thought they had the robbers. The victims were then brought into a room where they saw the defendant and the two others standing with their hands behind their backs, near the small of the back, with a police officer behind each one holding him. The Mangoubis shouted that those were the robbers and apparently attempted to assault them. Darwish agreed that those were the men who had robbed the store.
The defendant made a pretrial motion to suppress the station house identification and to preclude the victims from identifying him at trial. After a hearing the court found that Mrs. Mangoubi’s recollection of the station house identification was confused with what occurred in another case. The motion to suppress was granted with respect to her pretrial identification of the defendant but was otherwise denied. The court found that the station house identification was not unduly suggestive and that, in any event, each of the victim’s observations during the robbery provided an independent source for any in-court identification.
At the trial the defendant was identified by the three victims as well as by Officer Harrison and Luis Rodriguez. The defendant offered an alibi defense supported by his own testimony and the testimony of others. He also called Sanabria who had previously pleaded guilty and had completely served a six-month sentence for the robbery. Sanabria admitted committing the robbery with Louis Gaston and other. Although he had previously told the police and the prosecutor that the defendant was the third man, he claimed at trial that the third robber was a “Dominican dude” named Victor. The defendant also sought to call *247 Gaston. However, out of the presence of the jury Gaston informed the court that he would refuse to answer questions unless granted immunity, and the prosecutor refused to confer immunity upon him. Thus, over defendant’s objection, Gaston was excused without testifying.
The jury found the defendant guilty of two counts of robbery. The Appellate Division affirmed, without opinion, one Justice concurring in a memorandum.
The defendant first contends that he was deprived of his constitutional right to call witnesses on his behalf when the court refused to direct the prosecutor to grant immunity to Louis Gaston. Because this issue has been recently discussed at length in several of our decisions (see People v Sapia, 41 NY2d 160; People v Shapiro, 50 NY2d 747), the basic principles will be only briefly summarized.
By statute the prosecutor has discretion to confer full transactional immunity on witnesses for the prosecution or the defense (CPL 50.30). Although this discretion is reviewable for abuse if, for instance, the prosecutor builds his case with immunized witnesses but denies the defendant a similar opportunity or affirmatively threatens the defendant’s witnesses with prosecution for perjury if they give evidence favorable to the defense (see, e.g., People v Shapiro, supra), there was no such abuse in this case. The defendant only contends that the prosecutor had no legitimate reason to deny the request for immunity because there were no charges pending against Gaston at the time of trial. It appears that after his arrest the charges against Gaston were dismissed when Mrs. Mangoubi was unable to identify him at a preliminary hearing at which she was the only victim called to testify.
Of course, if Gaston had been indicted the prosecutor could not be said to have abused his powers under the immunity statute if he refused to grant him immunity from future prosecution even though the witness may have been willing to exculpate the defendant in exchange for his own release from criminal liability. Neither, in our view, can the prosecutor be said to have acted in bad faith whenever he refuses to grant absolution to a participant in the crime who has thus far eluded prosecution. Indeed to permit a *248 defendant to override the prosecutor’s discretion under those circumstances could itself lead to abuses of the immunity statute. In addition, the prosecutor’s decision in this case did not deprive the defendant of all witnesses for the defense. As indicated, the defendant and others testified regarding the alibi defense. The defendant also had the benefit of the testimony of Sanabria, an admitted and convicted participant in the robbery who testified, as Gaston presumably would have, that the defendant was not involved in the robbery. At most the defendant would have been entitled to a neutral instruction that Gaston was not available to testify in this case and that no unfavorable inference should be drawn from the failure to produce him (People v Thomas, 51 NY2d 466). However the defendant did not request such limited relief.
The defendant also contends that the station house showup was so suggestive as to deprive him of due process under the Federal and State Constitutions. He urges that the trial court should have suppressed the pretrial identification of all three victims, and not just Mrs. Mangoubi’s. He also claims that the showup tainted the in-court identifications of the three victims and that they too should have been suppressed.
The trial court’s determination that there was an independent source for the in-court identification by the victims is supported by sufficient evidence and is therefore beyond our review (People v Zabrocky, 26 NY2d 530, 536; People v Freeland, 36 NY2d 518, 524; People v Ramos, 42 NY2d 834). However, under no view of the evidence could it be said that the station house identification was not suggestive (see, e.g., People v Brown, 20 NY2d 238, 244; People v Ballott, 20 NY2d 600, 606-607; People v Logan, 25 NY2d 184, 191).
There was of course no lineup. The victims were shown only the suspects in custody after apparently being informed that they were the suspected robbers. The suggestion was reinforced when each of the suspects was literally held by a police officer during the confrontation. Showing the suspects together also enhanced the possibility that if one of them were recognized the others would be identified *249 as well. It was particularly unfair in this case because the defendant, who was not apprehended at the scene, was shown together with Sanabria who was arrested immediately outride the store and was undoubtedly more familiar to the victims who could hardly have any doubt of his guilt. Finally, permitting the victims as a group to view the suspects, increased the likelihood that if one of them made an identification the others would concur.
The record does not indicate any apparent need for such a flawed procedure. The showup did not occur at the scene of the crime soon after the robbery. It was held at the station house several hours after the crime had been committed. There is no indication that it would have been unduly burdensome at that particular place and time to form some kind of lineup or at least to place others in the room besides the suspects and their obvious custodians. Certainly there was no justification for permitting the witnesses to make a collective identification. In the interests of prompt identification procedures that are less than ideal may be anticipated and tolerable (see, e.g., People v Logan 25 NY2d 184, 195, supra; see, also, People v Rivera, 22 NY2d 453). In this case however there was no effort to make the least provision for a reliable identification and the combined result of the procedures employed was the ideal of suggestibility. In sum, the station house identification could hardly have been more suggestive and there is no conceivable excuse for employing those procedures.
Nevertheless the prosecutor urges that the ability of these two victims to make an in-court identification, completely independent of the station house showup, should also serve as a basis for admitting proof of the suggestive showup itself. He notes that in a recent case the Supreme Court held that the admissibility of a suggestive pretrial identification, like the admissibility of an in-court identification after such a showup, depends upon a consideration of whether under the totality of the circumstances there is a risk of irreparable misidentification (Manson v Brathwaite, 432 US 98). The court refused to adopt, as a necessary component of Federal due process, a “per se rule” excluding evidence of a pretrial identification whenever it *250 was made under inherently suggestive circumstances (Manson v Brathwaite, supra, pp 110-114). The prosecutor now urges that the accused can claim no greater due process right under the State Constitution (NY Const, art I, § 6).
In the past Federal constitutional guarantees, as interpreted by the Supreme Court, generally satisfied and often exceeded the requirements of comparable provisions of the State Constitution. But there would be no need for an independent State Bill of Rights if that were always the case. In recent years particularly the Supreme Court has emphasized and encouraged this and related aspects of Federalism by exercising special restraint in prescribing constitutional rules of procedure which would displace or foreclose development of State rules specifically tailored to local problems and experiences (see, e.g., Patterson v New York, 432 US 197; PruneYard Shopping Center v Robins, 447 US 74, 81; Barker v Wingo, 407 US 514, 523). Accepting that lead this court has frequently found that the State Constitution affords additional protections above the bare minimum mandated by Federal law (see, e.g., Cooper v Morin, 49 NY2d 69, 79; Sharrock v Dell Buick-Cadillac, 45 NY2d 152,159-161; People v Hobson, 39 NY2d 479; People v Settles, 46 NY2d 154; People v Singer, 44 NY2d 241, 253; People v Isaacson, 44 NY2d 511, 519-520).
Long before the Supreme Court entered the field this court expressed concern for, and devised evidentiary rules to minimize the risk of misidentification (People v Trow-bridge, 305 NY 471, 477). After the Supreme Court condemned the practice of police arranged showups and established minimum standards for pretrial identifications this court found that additional protections were needed under the State Constitution (People v Blake, 35 NY2d 331; People v Settles, supra).
The rule excluding improper showups and evidence derived therefrom is different in both purpose and effect from the exclusionary rule applicable to confessions and the fruits of searches and seizures. In the latter cases generally reliable evidence of guilt is suppressed because it was obtained illegally. Although this serves to deter future violations, it is collateral and essentially at variance with the truth- *251 finding process (see, e.g., People v McGrath, 46 NY2d 12). But the rule excluding improper pretrial identifications bears directly on guilt or innocence. It is designed to reduce the risk that the wrong person will be convicted as a result of suggestive identification procedures employed by the police.
A reliable determination of guilt or innocence is the essence of a criminal trial. A defendant’s right to due process would be only theoretical if it did not encompass the need to establish rules to accomplish that end. Permitting the prosecutor to introduce evidence of a suggestive pretrial identification can only increase the risks of convicting the innocent in cases where it has the desired effect of contributing to a conviction. In most instances, where the witness is able to make an untainted identification in court, proof of the suggestive showup only serves to bolster the People’s case. However, if the jury finds the in-court identification not entirely convincing it should not be permitted to resolve its doubts by relying on the fact that the witness had identified the defendant on a prior occasion if that identification was made under inherently suggestive circumstances. Similarly, if the witness is unable to identify the defendant at trial the defendant’s conviction should not rest solely upon evidence of a pretrial identification made under circumstances which were likely to produce an unreliable result.
Excluding evidence of a suggestive showup does not deprive the prosecutor of reliable evidence of guilt. The witness would still be permitted to identify the defendant in court if that identification is based on an independent source. And properly conducted pretrial viewings can still be proven at trial and, would be encouraged by the rule prohibiting use of suggestive ones. Neither does such a rule require a change in existing law. We have never held that it is proper to admit evidence of a suggestive pretrial identification. Indeed it seems to have been understood by courts and prosecutors[2] that a pretrial identification would *252 not be admissible if the procedures were unnecessarily suggestive (see, e.g., People v Cobenais, 39 NY2d 968; see, also, People v Ballott, supra; People v Logan, supra; People v Carter, 30 NY2d 279, 283).
In this case, however, where the defendant was properly identified at trial by five eyewitnesses to the crime, the error does not require reversal. As noted, two of the witnesses, Rodriguez and Officer Harrison, did not attend the showup. There was also an affirmed finding, supported by sufficient evidence, that there was an independent basis for the identification of the defendant in court by the three victims. Thus on the record the error must be deemed harmless (People v Gonzalez, 27 NY2d 53, 57).
Accordingly, the order of the Appellate Division should be affirmed.

. There was another employee, somewhere in the store, who apparently saw little of the robbery and was unable to describe the robbers or to identify defendant at the trial.

. This, of course, would not preclude the defendant, if so advised, from eliciting proof of the suggestive showup in order to demonstrate the potential impact on a subsequent or in-court identification.