OPINION OF THE COURT
Anne G. Feldman, J.
Defendant stands indicted on numerous counts of robbery, assault, attempted burglary and criminal use of a firearm. He moves pursuant to CPL 210.40 for a dismissal of this indictment in furtherance of justice on the ground that the People’s failure to seek statutory immunity for a potential defense witness has deprived him of his Sixth Amendment right to compulsory process and his due process right to a fair trial. For the reasons set forth herein, the court denies defendant’s motion.
The instant indictment stems frorri an incident alleged to have occurred on September 30, 1981. The People’s evidence indicates the following: Defendant was one of six participants in an armed robbery and assault, during which one of the two victims was shot and seriously wounded. During the course of the incident, the group displayed two handguns and a shotgun. Approximately 25 minutes after the incident, a police officer saw defendant *63 seven blocks from the scene. Believing that defendant fit the description of the only Hispanic perpetrator, the officer approached defendant and identified himself. At that time, defendant fled, dropping an imitation pistol as he ran. Defendant was apprehended and immediately transported to the scene, where one victim made a positive identification and the other said simply that defendant “looked like” one of the perpetrators.
Defendant has proclaimed his innocence since the outset. He has “passed” two polygraph tests, one of which was administered by an examiper chosen by the District Attorney’s office. Defendant and two alibi witnesses testified before the Grand Jury.
Defense counsel undertook an investigation of his own. His sleuthing led him to Richard Crawbuck, an individual whom counsel and his investigator both state admits having been one of the participants in the crime, and insists that defendant was not. Counsel also related that Crawbuck claims never to have met an individual by the name of Nelson Gonzalez and said that a picture of defendant was completely unfamiliar to him.
Armed with this information, defendant asked the People to agree to statutory, or “transactional” immunity for Richard Crawbuck. Defendant urged, in essence, that since Crawbuck[1] is not being prosecuted for this offense, the People have no legitimate reason to refuse his request.
In declining, the People contend that while Crawbuck is not being prosecuted for this incident at present, he might well be at some future date. They argue that if they obtain sufficient probative evidence indicating that Crawbuck was a participant in this crime,[2] they should not be precluded from prosecuting him.
The People have, however, offered to grant Crawbuck “use” immunity, so he could relate his version of the September 30 incident in the presence of both the Assistant District Attorney and defense counsel without fear *64 that his statement or evidence derived from it would be used against him in a subsequent prosecution. The People acknowledge that there is no statutory authority in this State for “use” immunity, but have agreed to place their guarantee on the record. Such a promise would clearly render Crawbuck’s statements inadmissible in any criminal proceeding against him, since they would be involuntary as a matter of law (see People v Dunbar, 53 NY2d 868).
Defense counsel argues that under the advice of counsel, Crawbuck has refused to discuss the incident sheltered only by an informal grant of “use” immunity, and that therefore a full grant of transactional immunity for Crawbuck is the only way to insure that defendant receives a fair trial. He contends that the People’s decision to withhold their consent to such a grant constitutes an act of bad faith. Since the People’s actions have deprived him of vital constitutional trial rights, he argues, justice dictates that the charges against him be dismissed.
At the outset, the court notes that that part of defendant’s argument which is based upon the Sixth Amendment compulsory process clause is unpersuasive. The mere fact that defendant has a constitutional right to obtain witnesses in his favor does not mean that if these witnesses are reluctant to testify, the prosecution must confer immunity upon them (People v Vicaretti, 54 AD 2d 236). This constitutional right, like so many others, is not absolute. It exists only to the extent that the witnesses may otherwise be compelled to attend and testify. For example, there is no compulsory process violation where the witness has disappeared or is otherwise unavailable; nor is there a compulsory process right to compel testimony over a claim of recognized privilege, such as attorney-client, priest-penitent or as here, the privilege against self incrimination (People v Sapia, 41 NY2d 160, 164-165; but see People v Shapiro, 50 NY2d 747, 760). Thus, in the instant case, while defendant has the right to subpoena Richard Crawbuck, he cannot compel Crawbuck to testify once Crawbuck is on the stand. By the same token, his compulsory process right alone cannot override the People’s decision not to request transactional immunity for Crawbuck.
*65 In this court’s view, the constitutional issue in the instant case is rather one of due process, and may be framed as follows: Whether the People are obligated to do more for this defendant; and whether defendant has been deprived of his due process right to a fair trial (see People v Sapia, 41 NY2d 160).
CPL 50.30 sets forth the procedure governing statutory immunity. This section provides, in essence, that it is within the power of the court to confer such immunity, but only when expressly requested by the People to do so. The People, therefore, have discretion to decide whether a witness will receive immunity.
This exercise of discretion, however, can be reviewed for abuse. In a case where witnesses favorable to the prosecution are accorded immunity, while those whose testimony tends to exculpate defendant are not, due process may be violated; due process rights may also be violated where the failure to grant immunity deprives the defendant of vital exculpatory testimony (People v Shapiro, 50 NY2d 747). In Shapiro, upon which defendant relies, the Court of Appeals held that the People had abused their discretion, and that defendant’s due process rights had been violated as a result. In Shapiro, the prosecution built its case upon the testimony of immunized witnesses, but denied this opportunity to defendant. Moreover, the prosecutor repeatedly threatened potential defense witnesses with perjury prosecutions if they offered testimony favorable to defendant. These witnesses had previously testified before the Grand Jury against defendant, and “it was unswerving and unconditional adherence to their prior testimony that the prosecution demanded. At every turn [the prosecutor] reiterated his resolve to prosecute any deviation for perjury.” (People v Shapiro, 50 NY2d, at p 759.) When the prosecutor refused to grant them immunity, the witnesses refused to testify on Shapiro’s behalf; the ultimate effect of this was to deprive defendant of any direct witnesses to his side of the story (People v Shapiro, 50 NY2d, at p 759).
The Shapiro court held that the prosecutor’s refusal to extend immunity, coupled with his explicit threats, “could have served no purpose other than to irretrievably bind the witnesses to their previous sworn versions, accurate or not. *66 By doing so, it * * * insured their unavailability as witnesses for the defendant.” (People v Shapiro, supra, p 761.) It was upon those facts, including an explicit offer of proof revealing the exculpatory nature of the proposed witnesses’ testimony, that the Shapiro court held that defendant’s due process rights had been violated and conditioned retrial upon the prosecutor seeking immunity for defendant’s witnesses.
The case at bar, however, features quite a different set of facts. First, Shapiro’s proposed witnesses did not seek protection from any past criminal activities, but rather solely from the possibility that any testimony they gave on Shapiro’s behalf would result in their prosecution for perjury (.People v Shapiro, supra, at p 758). Defendant herein, in contrast, asks that Crawbuck, an individual whom he says actually committed the instant crime, be given full immunity from prosecution for it. He argues that while no law enforcement personnel were able to secure evidence implicating Crawbuck in the crime, his own investigation has met with more success. Under these circumstances, the People clearly have not abused their discretion, since they cannot be said to have acted in bad faith by refusing to grant absolution to a participant in the crime who has thus far eluded prosecution (People v Adams, 53 NY2d 241, 247). “Indeed to permit a defendant to override the prosecutor’s discretion under those circumstances could itself lead to abuses of the immunity statute.” (Supra, pp 247-248.)
In Adams, defendants Sanabria and Gaston had been arrested and charged with robbery. Sanabria had subsequently pleaded guilty, and the charges against Gaston had been dismissed when the only complainant present at the preliminary hearing failed to identify Gaston as one of the three perpetrators. When called as a witness at Adams’ trial, Gaston refused to answer any questions unless the prosecutor granted him immunity. After the prosecutor refused, Gaston was excused without testifying. In addition to testifying himself and calling alibi witnesses, Adams had the benefit of Sanabria’s testimony. Sanabria testified, as Adams argued Gaston would have, that Adams was not one of the three men who committed the robbery.
*67 The instant case features a closer balancing of equities than Adams, however, and the People’s offer of “use” immunity weighed heavily in the court’s determination in this case that the People have not acted in bad faith.
The instant case differs from Shapiro (supra) in yet another critical respect: the People’s decision in this case did not deprive defendant of all witnesses to support his defense. As was the case in Adams (supra), defendant and other witnesses may still testify at trial regarding defendant’s alibi defense (People v Adams, 53 NY2d, at p 248), just as they did before the Grand Jury.
Under these circumstances, it is this court’s view that dismissal of the indictment would not further the interests of justice. Rather, justice is better served in this case by a full and fair trial, where both the People and defendant will be afforded the opportunity to present evidence regarding what appears to be a most serious crime.
Accordingly, defendant’s motion to dismiss the indictment is denied.

. The court notes that Richard Crawbuck is presently serving a term of 4Va to 9 years of incarceration.

. While it appears that one of the complainants viewed a photograph of Crawbuck, the exact nature and results of any such identification procedure are unclear. The only thing certain about this procedure is that it took place over a year and a half after the crime.