Titone, J.
(concurring). I agree that there should be an affirmance because, in view of the virtually airtight proof of defendant’s guilt, any error in admitting evidence of the second showup identification procedure was harmless. I am compelled to write separately, however, because I cannot subscribe to the majority’s rationale, which upholds that procedure, in essence, by equating its temporal and geographic proximity to the crime with the element of exigency that the Due Process Clause concededly requires. Additionally, I cannot join in an opinion that advocates a case-by-case inquiry but provides no concrete standards or guidelines to aid in distinguishing permissible from impermissible showup procedures. Without such standards, the majority’s holding leads to the conclusion that, absent extraordinary circumstances, all "prompt on-the-scene” showups are permissible precisely because they are prompt and conducted at or near the crime scene. Ironically, this syllogism results in its own rule of "per se” or "presumptive” admissibility. Accordingly, I concur, but only in result.
It is elementary that the validity of police-arranged identification procedures are, in all cases, measured against the standards of due process (Stovall v Denno, 388 US 293). It is also elementary that in this context the due process analysis *547 requires an inquiry into whether the procedure in question was unnecessarily suggestive (id.; see, 1 LaFave & Israel, Criminal Procedure § 7.4 [b]). As one commentator has observed, the "two constituent parts” of this two-pronged inquiry focus, respectively, on the suggestiveness of the procedure and the existence of "some good reason” for using it rather than a less suggestive identification method (id., at 581). Thus, one aspect of the test is concerned with accuracy while the other is concerned with expediency.
As to the accuracy or reliability prong, the Supreme Court has noted that, in general, "[t]he practice of showing suspects singly * * * has been widely condemned” (Stovall v Denno, supra, at 302). This is because the practice is inherently suggestive (see, e.g., People v Riley, 70 NY2d 523, 529; Wall, Eye-witness Identification in Criminal Cases, at 83). Nonetheless, due process may tolerate such "less than ideal” procedures when "the interests of prompt identification” are served (People v Adams, 53 NY2d 241, 249) or other exigent circumstances exist (e.g., People v Rivera, 22 NY2d 453).
The class of procedures generally referred to as "prompt on-the-scene showups” have heretofore routinely been analyzed within this framework. Such procedures are tolerated not because they are not suggestive, but rather because they serve legitimate and pressing law enforcement goals (see, 1 LaFave & Israel, op. cit, at 590 [and authorities cited therein]). Before this case, the most direct statement of the principle was made in People v Hicks (68 NY2d 234, 242), in which we observed that "speedy on-the-scene viewing[s]” are "appropriate” because they enable the authorities to decide quickly whether the person they have apprehended should be formally arrested (accord, People v Mercado, 63 AD2d 720; see, People v Love, 57 NY2d 1023, 1024 [prompt on-the-scene showups, although "less than ideal(,) may * * * be tolerable in the interest of prompt identification”]). Thus, while it is true, as the majority asserts, that prompt on-the-scene showups have generally been allowed (majority opn, at 544), it is also true, as the majority opinion itself later admits, that "judicial toleration of [these procedures] rests on our objective that the police have reasonable assurances that they have arrested or detained the right person.” (Majority opn, at 545.)
Viewed against this backdrop and its own formulation of the rule, the majority’s analysis is, to say the least, puzzling. The majority’s holding rests on its equation of the challenged *548 procedure’s temporal and spatial proximity to the crime with the exigency element of the due process analysis. To support its position, the majority then invokes a series of phrases and concepts, including an "unbroken chain of events”, "fast-paced street episodes and encounters,” "fast-moving, uninterrupted array of activity” and "the uncertain, emergent realities * * * of these street situations” (majority opn, at 545). However, these phrases are insufficient to dispose of the due process problem presented by this appeal.
Postcrime street arrests are not juggernauts that must be permitted to run their own courses wherever they may lead merely because they are "fast-paced.” Moreover, contrary to the majority’s suggestion, there is no reason not to "[f]reez[e] the frame at the point of apprehension” (majority opn, at 545), and at all subsequent points, to assess compliance with the governing constitutional rules at each stage of the encounter. Under our system of judicial review, police-citizen street encounters must be treated as step-by-step processes, each phase of which must be individually assessed by a court acting in accordance with constitutional due process precepts. Indeed, that is precisely what our judicial role requires (see, e.g., People v De Bour, 40 NY2d 210).
This is not to suggest that police conduct such as that which occurred here was necessarily outside the realm of good police work. However, good police work and observance of due process are not always the same thing. While the former is a worthwhile goal for all who are interested in effective law enforcement, the latter must remain the center of our judicial inquiry when questions regarding the admissibility of evidence are placed before us.
As the majority itself has stated, defendant was apprehended after an "unbroken chain of events” beginning with the termination of the robbery and ending with his capture by the police after an uninterrupted chase (majority opn, at 545). The store manager whom defendant was charged with robbing identified him — promptly and positively — within moments after his arrest. So too did the taxicab driver who had driven defendant to the dry cleaning store, waited outside at his direction, and then drove defendant away while defendant held a gun to his head, with the store manager in pursuit. Surely, after those two identifications were made, the arresting officers, who had chased and subdued defendant as he alit from the taxi, had no doubt that they had the "right man” in custody and had no thought of releasing him whatever the *549 outcome of any subsequent identification might be.[1] Thus, the primary purpose of a "prompt on-the-scene showup” that even the majority posits had been served, and there was no real investigatory reason to bring defendant back to the robbery site to obtain an identification from yet another witness. The conclusion is therefore inescapable that the officers’ purpose in conducting the second showup was either to augment the existing trial evidence by generating a second admissible out-of-court identification or to "lock in” the witness’s memory of the accused perpetrator thereby ensuring a "positive” identification in court. Neither goal reflects the level of "exigency” that we have previously required.
Of course, these evidence-generating aims might not be so troublesome if prompt on-the-scene showup procedures provided an unequivocal assurance of accuracy. However, the circumstances which surround these one-on-one procedures also involve a high degree of suggestiveness, which gives rise, in turn, to a substantial risk of error.[2] The risk is especially great in cases such as this one, where the second identifying witness is, or may be, aware that one or more other eyewitness identifications have already been made (see, People v Adams, supra; see also, People v Love, supra).
What is perhaps the most disturbing aspect of the majority’s present rationale is its failure to define a workable standard for evaluating the validity of "prompt on-the-scene” showups. The majority has rejected what it characterizes as a proposed "per se” or "presumptive” rule in favor of a "probing, even skeptical fact finding by the lower courts”, which must assess the "specific and varying circumstances in individual cases” (majority opn, at 546, 543) in light of "the governing legal principles.” (Majority opn, at 545.) However, the majority has not indicated what considerations should be weighed in the lower courts’ "probing” inquiry, what "governing legal principles” should be applied or what "specific facts and * * * *550 circumstances” would warrant a finding of undue suggestiveness. Further, although "routinized, unduly suggestive identification modalities” are not to be tolerated (majority opn, at 546), it remains unclear what types of conduct would fall within the disapproved category.
Indeed, the majority’s holding in this case makes it difficult to foresee when, if ever, a "prompt on-the-scene showup” would be suppressed as unnecessarily suggestive. Despite their inherent suggestiveness, such procedures would all be deemed "necessary” under the majority’s analysis, precisely because they are "prompt” and conducted near the scene of the crime. And, even such additionally suggestive procedures as displaying the suspect in handcuffs and seated in the back of a patrol car would not be sufficient to render the procedure "unnecessarily suggestive” within the meaning of the well-established due process test. Given the majority’s tolerance for such practices in a case where the police were already sure that they had the "right man,” one is left to wonder what the "rigorous review” that the majority mandates (majority opn, at 546) really means.
For all of these reasons, I would hold that the second showup procedure involving the store employee who had witnessed the robbery violated defendant’s due process rights and ought to have been suppressed. The suppression of this evidence, however, need not lead to a reversal. At defendant’s trial, the manager of the dry cleaning establishment identified defendant as the person who had robbed her on two separate occasions within a 10-day period. Additionally, defendant was positively identified by the taxicab driver who had driven him to and from the robbery scene and had ample opportunity to observe him. The other proof included evidence that the store manager and the taxicab driver identified defendant on the street immediately after the robbery, the testimony of the police officer who chased and apprehended defendant after he ran out of the taxicab and, finally, an out-of-court admission by defendant that he had committed the robbery because he needed the money. Under these circumstances, there is no reasonable possibility that the jury might have reached a different conclusion if the identification testimony of the second store employee had been subtracted (see, e.g., People v Adams, supra, at 252). Indeed, this harmless error conclusion is strengthened by the fact that the second employee had not been in a position to observe the robber’s face during the first robbery incident and, consequently, she was the weaker of the *551 two eyewitness-victims. Thus, the court’s decision to admit this witness’s identification testimony, while erroneous, does not require reversal. For that reason, and that reason alone, I concur in the Court’s decision to affirm.
Chief Judge Wachtler and Judges Kaye and Alexander concur with Judge Bellacosa; Judge Titone concurs in result in a separate opinion in which Judges Simons and Hancock, Jr., concur.
Order affirmed.

. The two prior identifications of defendant as the robber are relevant to the validity of the third because they negate any conclusion that the latter was supported by exigency. The fact that the two prior identifications may or may not have been "police-arranged” (see, majority opn, at 546) is not pertinent to this inquiry.

. Among the many subtle, and not so subtle, suggestive circumstances inherent in "prompt on-the-scene” showups are the facts that (1) the displayed individual has just been "caught and held” by the police, implying the police’s belief that they have the "right person” in custody and (2) the suspect is often displayed in handcuffs or crouched in the back of a patrol car — conditions suggesting criminality.